[No. B072997. Second Dist., Div. One. Apr. 29, 1994.]

BANK ONE TEXAS, N.A., Plaintiff and Appellant, v.
SHELDON L. POLLACK, Defendant;
BANK OF MONTREAL, Real Party in Interest and Respondent.

## COUNSEL

David J. Myers for Plaintiff and Appellant.

Mayer, Brown & Platt, Neil M. Soltman and Jacqueline R. Brady for Real Party in Interest and Respondent.

## OPINION

### SPENCER, P. J.—

#### INTRODUCTION

Bank One Texas, N.A.[1] appeals from an order granting a motion to amend a judgment but denying the request that the amendment be entered nunc pro tunc as of the date of the entry of the original judgment.

#### STATEMENT OF FACTS

Texas American Bank/Galleria secured a judgment in Texas against Sheldon L. Pollack (Pollack) and others on May 10, 1988. The judgment, which awarded Texas American Bank/Galleria approximately $1.2 million in damages, was affirmed on appeal. The basis for the judgment against Pollack was his personal guarantee of a series of real property development loans which originated in 1981 and on which the borrowers later defaulted. The original loan of $2 million was increased in February 1982 by $1.5 million and again in February 1984 by an additional $500,000.

Texas American Bank/Galleria became insolvent during the pendency of the appeal of the Texas judgment. Pollack died in February 1989. Texas American Bank/Galleria's successor in interest, Team Bank, sought and secured the entry of a judgment on a sister state judgment on November 13, 1989. Notice of the entry of the judgment was served on the administrator of Pollack's estate on December 4, 1989. An abstract of judgment was recorded in Los Angeles County on December 29, 1989. Following settlements with other judgment debtors, $746,789.07 plus accrued interest remains unpaid on the judgment.

On March 4, 1982, Pollack established the Sheldon L. Pollack Trust of 1982. He placed all of his material assets in the trust, named himself as the trustee and inter vivos beneficiary and retained the power of revocation until his death. Pollack and his wife acquired a residence on July 20, 1984, at which time Pollack transferred his community property interest in the residence to the trust. The existence of the trust and the transfer of Pollack's assets thereto was not disclosed to or learned of by appellant's predecessors in interest until approximately June 1989.

---

[1]The original plaintiff in the sister state action was Texas American Bank/Galleria. Team Bank was the successor in interest to Texas American Bank/Galleria and secured the entry of the judgment on the sister state judgment. Since then, Bank One Texas, N.A. has succeeded to the interest of Team Bank by merger therewith.

In 1985 and 1988, respondent Bank of Montreal loaned a partnership in which Pollack was a general partner approximately $15 million for real property development in Las Cruces, New Mexico. Pollack, his wife and the trust each guaranteed the loan. When the partnership defaulted in 1988, respondent made unsuccessful demands for payment upon the guarantors. On April 17, 1989, respondent filed suit against the trust and Mrs. Pollack. In addition, respondent filed a claim against Pollack's estate; it withdrew this claim on December 14, 1989.

The claim for $1.26 million which appellant's predecessor in interest filed against the Pollack estate was allowed in December 1989, after appellant's predecessor in interest agreed to defer enforcement proceedings against the trust. According to counsel for the estate, Pollack had less than $100,000 in assets upon his death. It is conceded that the estate is insolvent, and respondent knew this as of October 27, 1989.

In December 1989, respondent and the trust settled the suit. The trust agreed to give respondent a $3 million limited recourse term note secured by the trust's interest in various real property and assorted real estate partnerships. Included among the security for the note was the trust's one-half interest in the Pollack residence. When respondent entered into the settlement agreement, the only recorded encumbrance on the Pollack residence was a first deed of trust in the face amount of $625,000. Respondent recorded a deed of trust on the trust property on May 4, 1990.

Following the borrowers' default on the first deed of trust on the residence, respondent purchased the note, received an assignment of the deed of trust and purchased the property at the foreclosure sale in May 1991 for $1,095,000. The $439,329.06 paid by respondent at the foreclosure sale in excess of the sum due under the first deed of trust is the surplus at issue in this case and in an interpleader action filed in Orange County Superior Court. (T.D. Service Co. v. Uta Pollack et al. (Super. Ct. Orange County, 1992, No. 69565).)

## CONTENTION

Appellant contends the trial court erred in denying its request to file the amended abstract of judgment nunc pro tunc as of the date of the original abstract. For the reasons set forth below, we agree.

## DISCUSSION

The Sister State and Foreign Money Judgments Act (Code Civ. Proc., § 1710.10 et seq.) permits a judgment creditor to "apply for the entry of a

judgment based on a sister state judgment" by filing an application therefor. (*Id.*, § 1710.15, subd. (a).) Under the authority of the act, appellant's predecessor in interest applied for the entry of a sister state judgment on the 1988 Texas judgment against Pollack, and judgment was entered accordingly on November 13, 1989. The administrator of Pollack's estate was served with notice of entry of the judgment on December 4, 1989, and the estate allowed a claim for the amount of the judgment shortly thereafter. An abstract of judgment was recorded on December 29, 1989.

When appellant's predecessor in interest discovered the Pollack estate was insolvent, but Pollack had transferred his assets to a revocable inter vivos trust created on March 4, 1982, after the origination of and a substantial increase in the loan guarantees which underlay the Texas judgment, appellant's predecessor moved to amend the judgment to name the trust as the judgment debtor and to relate the amended judgment back to the date of the entry of the original judgment. Due to the intervening bankruptcy filing of the trust, the motion was not heard until October 20, 1992. The court granted the amendment, but refused to enter the amended judgment nunc pro tunc.

■ Respondent argues that this court need not decide whether the court should have entered the amended judgment nunc pro tunc, in that the original judgment entered on the sister state judgment is void as a matter of law due to Pollack's death and the court's consequent failure to secure personal jurisdiction over him. Respondent misunderstands the purposes and effect of the statutory scheme.

■ The rendition of a judgment is a judicial act, and a judgment thus has full force and effect once it has been rendered, regardless of whether it has been entered. (*Brown* v. *Superior Court* (1925) 70 Cal.App. 732, 735 [234 P. 409].) Entry simply provides record evidence of a judgment. (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 50, p. 487.) Clearly, a judgment duly rendered, being complete at the moment of rendition, may be entered after the death of a party without first substituting into the case the administrator of the deceased party's estate.

■ . The Sister State and Foreign Money Judgments Act " 'manifests a legislative intent that its use or applicability be predicated upon a judgment first obtained and rendered outside of this state. The judgment in this state, following the judgment of a sister state, is ministerial only, that is, an activity by the clerk of this court.' [Citation.] Where the judgment debtor fails to challenge the matter, the judgment will be entered and the application will have served its purpose, all without any judicial act having been performed by the court. [Citations.]" (*Aspen Internat. Capital Corp.* v.

*Marsch* (1991) 235 Cal.App.3d 1199, 1203 [286 Cal.Rptr. 921].) In other words, the act simply permits the *registration* of a sister state judgment so it may be enforced against property located in this state. (*Liebow* v. *Superior Court* (1981) 120 Cal.App.3d 573, 575 [175 Cal.Rptr. 26].)

■ Inasmuch as the superior court was not required to obtain jurisdiction over Pollack, entry of the sister state judgment was a valid ministerial act. Nothing more was required beyond subsequently serving notice of the entry on the administrator of Pollack's estate (Code Civ. Proc., § 416.90), in the same manner as a summons, and filing the proof of service with the court. (*Tsakos Shipping & Trading, S.A.* v. *Juniper Garden Town Homes, Ltd.* (1993) 12 Cal.App.4th 74, 85 [15 Cal.Rptr.2d 585].) Appellant's predecessor in interest did this, properly making substituted service (Code Civ. Proc., § 415.20, subd. (b)) on the estate administrator and filing with the court the proof of service and its accompanying declaration of diligence.

■ Respondent additionally argues that the judgment is void for procedural defects. As respondent sees it, service of the notice of entry was defective and an abstract of judgment was issued prematurely. Neither of these defects would void the judgment as a matter of law. Defective or delayed service alone does not provide grounds to vacate the entry of a sister state judgment (*Tsakos Shipping & Trading, S.A.* v. *Juniper Garden Town Homes, Ltd., supra,* 12 Cal.App.4th at pp. 89-90; *Epps* v. *Russell* (1976) 62 Cal.App.3d 201, 205 [133 Cal.Rptr. 30]), and the premature issuance of an abstract of judgment would not affect the validity of the entry of the judgment itself. Moreover, it is clear respondent has no standing to seek vacation of the judgment or the abstract, actions which may be taken only by the judgment debtor or, in this case, the judgment debtor's representative. (See Code Civ. Proc., § 1710.40, subd. (a).)

■ Turning to the merits of the matter, appellant's predecessor in interest relied on Probate Code section 18201[2] as authority for the amendment of the judgment entered on the sister state judgment. Section 18201 and

---

[2]Probate Code section 18201 was repealed by Statutes 1991, chapter 992, section 2, but continues to apply to the estates of those who died before January 1, 1992. (Prob. Code, § 19012, subd. (b).) Section 18201 provided: "Upon the death of a settlor who had retained the power to revoke the trust in whole or in part, the property that was subject to the power of revocation at the time of the settlor's death is subject to the claims of creditors of the decedent settlor's estate and to the expenses of administration of the estate to the extent that the decedent settlor's estate is not adequate to satisfy those claims and expenses." This section has been replaced by section 19001 (Stats. 1991, ch. 992, § 3).

a companion statute, section 18200,[3] were enacted in 1986 (Stats. 1986, ch. 820, § 40, p. 2750) as part of an extensive change and reorganization of the law governing trusts (Division 9 of the Probate Code) that the Law Revision Commission had recommended. (See Cal. Law Revision Com. com., Deering's Ann. Prob. Code, div. 9, p. 163.)

Prior to the enactment of Probate Code section 18201, the sole remedy available to a creditor after a deceased trust settlor had left the estate insolvent by transferring assets to a revocable inter vivos trust was a separate action for relief against the trust on the ground the conveyance was fraudulent. (Civ. Code, § 3439.07.) With respect to creditors' claims which arose before the transfer to the trust, the transfer need not have been fraudulent in the literal sense, i.e., made with the intent of deceiving creditors. A transfer would be deemed fraudulent if it were made without consideration and left the transferor insolvent. (*Id.*, § 3439.05; *Estate of Heigho* (1960) 186 Cal.App.2d 360, 365-366 [9 Cal.Rptr. 196].) The transfer to an inter vivos trust of sufficient assets to render the settlor's personal estate insolvent met this test, particularly when the settlor also was the beneficiary and retained the power of revocation. Thus, an action to set aside the conveyance to the trust almost invariably was successful. It was, however, a cumbersome, time-consuming procedure, and it was circumscribed by a restrictive limitations period. (Civ. Code, § 3439.09.)

The enactment of Probate Code section 18201 removed these constraints and eliminated the necessity of proving the conveyance fraudulent. Section 18201 permitted a judgment creditor who establishes the inadequacy of estate assets to ignore the trust and reach directly those assets subject to the decedent settlor's power of revocation. (See Cal. Law Revision Com. com., Deering's Ann. Prob. Code, § 18200, p. 524.) The judgment creditor of such a deceased settlor need only have established a judgment lien against the settlor; thereafter, the judgment creditor may levy a writ of execution directly on the trust assets which were subject to revocation during the settlor's lifetime. (*Heywood* v. *Municipal Court* (1988) 198 Cal.App.3d 1438, 1445-1446 [244 Cal.Rptr. 435].) Therefore, it appears no amendment of the judgment to add the trust as a judgment debtor was necessary. The judgment lien attached absolutely to the assets of the Pollack estate and provisionally to the assets of the trust when the abstract of judgment was recorded. Having granted amendment, however, the superior court was obligated to preserve the priority of the lien if possible.

---

[3]Probate Code section 18200 applies to living settlors of inter vivos trusts. It provides: "If the settlor retains the power to revoke the trust in whole or in part, the trust property is subject to the claims of creditors of the settlor to the extent of the power of revocation during the lifetime of the settlor."

The superior court refused to enter the amended judgment and abstract nunc pro tunc, relating them back to the date on which they originally were entered and recorded, on the ground that respondent was a bona fide encumbrancer and thus acquired its lien without knowledge of the competing lien. Assuming respondent may defend against a levy pursuant to Probate Code section 18201 by establishing this defense (Civ. Code, §§ 3439.04, subd. (b), 3439.05, 3439.07, 3439.08, subd. (a)), respondent must have proven it took the encumbrance "in good faith and for a reasonably equivalent value" (*ibid.*), and without actual or constructive notice of another's rights. (*Gates Rubber Co. v. Ulman* (1989) 214 Cal.App.3d 356 [262 Cal.Rptr. 630].) Respondent demonstrated that it took the encumbrance in good faith and in settlement of a reasonably equivalent obligation. The sole question is whether respondent knew of appellant's predecessor in interest's judgment lien.

It is undisputed that respondent knew the estate was hopelessly insolvent and knew the nature of the trust. It may be inferred that respondent realized it was largely the transfer of assets to the trust that rendered the estate insolvent. Inasmuch as one is presumed to know the law (*Macfarlane v. Dept. Alcoholic Bev. Control* (1958) 51 Cal.2d 84, 90 [330 P.2d 769]), respondent is charged with actual knowledge of Probate Code section 18201 (see, e.g., *People* ex rel. *Mosk v. Lynam* (1967) 253 Cal.App.2d 959, 967-968 [61 Cal.Rptr. 800]). While respondent and the trust reached agreement on December 1, 1989, that the promissory note received in settlement of respondent's claim would be secured by all of the trust assets, the settlement agreement was not executed until April 24, 1990, and the deed of trust was not recorded until May 4. The abstract of judgment on the sister state judgment was recorded on December 29, 1989, thereby imparting constructive notice of the facts recited therein. (Civ. Code, § 1213.)

The question remains whether these facts provide enough of a basis for concluding respondent had constructive notice that the judgment lien against Pollack was a lien against the assets of the trust. (Civ. Code, § 19.) There is no evidence respondent actually was aware in April and May 1990 of the judgment lien against Pollack.

One is charged with constructive notice of a fact when one has "actual notice of circumstances sufficient to put a prudent [person] upon inquiry as to a particular fact" (Civ. Code, § 19), and one has actual notice when one has "express information of a fact" (*id.*, § 18, subd. 1). As noted, *ante*, respondent had actual notice that the estate was insolvent, the trust was revocable during Pollack's lifetime and the insolvency of the estate was related to the transfer of Pollack's assets to the trust. Additionally, respondent is charged with actual knowledge of Probate Code section 18201.

Armed with this knowledge, a prudent person would ascertain whether there were liens recorded against the decedent or his estate. Accordingly, respondent is charged with constructive notice of the lien recorded by appellant's predecessor in interest, and it thus took the encumbrance with notice of another's rights. In short, the superior court erred in concluding respondent was a bona fide encumbrancer and in therefore refusing to enter the amended judgment nunc pro tunc to preserve the priority of appellant's lien.

Both parties to this appeal request the imposition of sanctions against the opposing party, appellant on the ground that respondent misrepresented a material fact to the superior court and respondent on the ground that this is a frivolous appeal. The Pollack estate was a party to respondent's settlement with the trust, but respondent's counsel represented to the court that the estate was not involved in the settlement or the negotiations leading to the settlement. Appellant fails to explain the materiality of this misrepresentation, and cites no authority for the proposition that this court would have the power to sanction the conduct. Accordingly, we deem the point waived. (*People* v. *Dougherty* (1982) 138 Cal.App.3d 278, 282-283 [188 Cal.Rptr. 123].) As for respondent's request, as is clear from the result, appellant's position has arguable merit and the appeal thus is not frivolous. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].) Accordingly, we deny both requests for sanctions.

The order is reversed and the superior court is directed to enter the amended abstract of judgment nunc pro tunc as of the date of the original abstract. Plaintiff is to recover its costs on appeal.

Masterson, J., concurred. Vogel (Miriam A.), J., concurred in the disposition only.