[No. B141132. Second Dist., Div. Seven. May 25, 2001.]

LORE DOBLER et al., as Cotrustees, etc., Plaintiffs and Appellants, v. ARLUK MEDICAL CENTER INDUSTRIAL GROUP, INC., Defendant and Respondent.

**COUNSEL**

Horvitz & Levy, Barry R. Levy, Daniel J. Gonzalez, Curt C. Cutting; Watkins, Blakely & Torgerson and P. Arnsen Blakely for Plaintiffs and Appellants.

Alexander E. Macksoud for Defendant and Respondent.

## OPINION

**JOHNSON, J.**—Cotrustees appeal from an order of the probate court directing payment of the unsatisfied portion of a judgment entered against the decedent from assets of the decedent's revocable inter vivos trust. They contend the probate court erred in concluding Probate Code section 19001 authorized payment to judgment creditors from trust assets without requiring the creditors to first sue the trustees within the time required by the applicable statutes of limitation. We find no error. Accordingly, we affirm.

### FACTS AND PROCEEDINGS BELOW

Dr. Theodore M. Hylwa formed Arluk Medical Center Industrial Group, Inc. (AMCIG) in 1988 along with two other doctors. Each doctor received a third of the shares of the corporation. As part of their employment agreement with the corporation the doctors agreed to render medical care to AMCIG's patients and to contribute to AMCIG income received from their services.

In 1989 the doctors agreed AMCIG would purchase insurance on the life of the shareholders in the amount of $400,000 for each shareholder. In the event of a shareholder's death the proceeds were to be used to purchase the deceased shareholder's stock in AMCIG and to pay off corporate debt. Apparently, Dr. Hylwa did not want term life insurance and entered into a separate agreement with the other shareholders. In exchange for payment in an amount equal to the cost of a $400,000 term life insurance policy, he agreed to purchase a much larger whole life insurance policy for himself, and to designate $400,000 of the death benefit for the benefit of AMCIG.

In 1988 Dr. Hylwa created a revocable inter vivos trust and transferred a substantial portion of his assets to his trust. Dr. Hylwa died on August 19, 1993. Richard L. Hylwa and Lore Dobler, plaintiffs and appellants in this case, are the successor cotrustees of the trust.

At his death Dr. Hylwa also owned assets outside of his trust which were subject to probate administration. Hylwa and Dobler petitioned the probate court for an order appointing them as Dr. Hylwa's personal representatives. Notice of hearing on their petition was published in the probate proceedings.[1] Ultimately, the probate court appointed Hylwa and Dobler co-administrators of Dr. Hylwa's probate estate.

After Dr. Hylwa's death, Hylwa and Dobler could not find the original signed trust instrument. As a result, they filed a petition in the probate court

---

[1] *Estate of Hylwa* (Super. Ct. L.A. County, No. NP003243).

seeking to have an unsigned copy of the trust document deemed the original. The court granted the petition and ordered Hylwa and Dobler to serve as cotrustees to carry out the administration of the trust. The court further granted their petition for court supervision of Dr. Hylwa's trust.[2]

At his death AMCIG discovered Dr. Hylwa's trust was the sole beneficiary of his various life insurance policies having a total death benefit of $3 million. In addition, AMCIG discovered Dr. Hylwa had not contributed revenue earned from the treatment of AMCIG's patients to AMCIG as agreed.

On March 18, 1994, AMCIG filed a timely claim against Dr. Hylwa in the probate proceedings. Hylwa and Dobler took no affirmative action to accept or reject AMCIG's claim for 30 days. AMCIG elected to treat the claim as if the co-administrators had rejected it. AMCIG then filed a timely action against Dr. Hylwa's estate on its claim.[3]

After five years of litigation, on May 25, 1999, the court entered judgment in favor of AMCIG. In June 1999 the court also granted AMCIG's motion for attorney fees and costs. These amounts combined resulted in a judgment for AMCIG in an amount of over $800,000. Hylwa and Dobler did not appeal and the judgment became final.

On June 28, 1999, Hylwa and Dobler filed a petition requesting to close Dr. Hylwa's probate estate. They claimed the remaining probate property had a fair market value of approximately $282,000. After paying court-approved expenses to administer the estate, only $136,707 remained to satisfy AMCIG's $800,000 judgment.

AMCIG sought to have the unpaid balance of its judgment satisfied out of trust assets, which had been valued at over $5 million. Thus, on August 17, 1999, AMCIG filed a petition for an "order instructing the trustees to pay [it as a] judgment creditor." AMCIG filed its petition in the Central District of the Los Angeles Superior Court as case No. BP057835. At the hearing on the motion the court dismissed AMCIG's petition without prejudice. The court concluded AMCIG's claim should instead have been asserted in the trust estate proceedings, which had been pending since 1993 in the southern district.

---

[2]*Dobler v. Arluk Medical Center Industrial Group, Inc.* (Super. Ct. L.A. County, No. NP003391).

[3]*Arluk Medical Center Industrial Group, Inc. v. Hylwa* (Super. Ct. L.A. County, 1999, No. NC014908).

Shortly thereafter, Hylwa and Dobler petitioned the court supervising the trust for instructions. They sought an order declaring AMCIG lacked standing to assert any claim against them as trustees of the trust. Hylwa and Dobler argued AMCIG's claim for payment of its judgment was barred by the statute of limitations in the Probate Code, providing actions on rejected claims had to be brought within three months of rejection.[4] In addition, the trustees argued AMCIG's action against Dr. Hylwa's trust estate was barred by the one-year statute of limitations for actions against decedents as provided in Code of Civil Procedure section 366.2.

AMCIG opposed the trustees' petition and filed its request for payment as a judgment creditor. AMCIG argued the one-year statute of limitations did not apply because its petition did not constitute a new "action" within the meaning of Code of Civil Procedure section 366.2. Instead, AMCIG stated its request for payment was authorized by Probate Code section 19001. This section provides the assets of a revocable trust are subject to the claims of creditors of the deceased settlor's probate estate to the extent the probate estate is insolvent.

On December 21, 1999, the probate court issued a minute order denying Hylwa and Dobler's petition for an order declaring AMCIG lacked standing to pursue its request for payment out of trust assets. On the other hand, the court granted AMCIG's petition and ordered the trustees to pay the unsatisfied portion of AMCIG's judgment from Dr. Hylwa's trust assets.

On February 14, 2000, the court issued a formal order on the cross-petitions. Regarding payment of the balance of AMCIG's judgment, the court's order stated: "The Co-Trustees are instructed to marshal all the assets of the Trust, identify and pay those creditors that have priority claims under Probate Code § 11420 and then after all priority claims are paid, the Co-Trustees shall pay the residuary balance of funds to AMCIG and any other general creditor on a pro rata basis in accord with Probate Code § 11420(b) and all in the ordinary course of administering the affairs of the Trust."

Hylwa and Dobler appeal from the adverse ruling.

## DISCUSSION

### I. *The Statutory Provisions Governing Claims Against Probate and Trust Estates*

The Legislature enacted a comprehensive scheme designed to expedite the administration of estates while providing beneficiaries and administrators some protection from unknown creditor claims.

---

[4]Probate Code section 9353, subdivision (a).

Probate Code section 9100 provides that a creditor must file a claim in the probate estate proceedings within either four months after the court appoints a general personal representative, or within 60 days after notice of administration is given to the creditor, whichever is later.[5] ██ The short time limitation in section 9100 for filing claims is designed to expedite the distribution of estate assets by requiring creditors to promptly assert their claims against a decedent.[6]

Code of Civil Procedure section 366.2 provides for an outside time limit of one year for filing any type of claim against a decedent. This section provides in pertinent part: "If a person against whom an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued, dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply."[7]

This uniform one-year statute of limitations applies to actions on all claims against the decedent which survive the decedent's death. This limitations period, however, is tolled by (1) the timely filing of a creditor claim;[8] (2) the filing of a petition for payment of debts, claims or expenses from the decedent's revocable trust;[9] or (3) a proceeding to judicially construe a "no contest" provision.[10] Thus, if a claim is timely filed in the probate proceedings, it remains timely filed even though the representative or court acts on a claim by allowing, approving or rejecting the claim outside the limitations period.[11] On the other hand, if a claim is not filed in a probate proceeding within either the claims filing period of Probate Code section 9100, or within

---

[5]Probate Code section 9100, subdivision (a). All further statutory references are to the Probate Code unless otherwise noted.

[6]See *Venturi v. Taylor* (1995) 35 Cal.App.4th 16, 24 [41 Cal.Rptr.2d 272] ("This statutory time restriction is to ensure that the estate's representative is notified of all claims within a reasonable time . . . ."); *Varney v. Superior Court* (1992) 10 Cal.App.4th 1092, 1101 [12 Cal.Rptr.2d 865] ("The time restriction on filing creditor's claims is intended to ensure the representative of an estate is notified of all claims within a reasonable period so that the estate can be expeditiously settled and distributed to the legatees or heirs.").

[7]Code of Civil Procedure section 366.2, subdivision (a).

[8]Section 9100. In a proper case a probate court may also grant a creditor's or representative's request to file a late claim. (§ 9103.)

[9]Section 19000 et seq.

[10]Section 21300 et seq. Other matters not subject to the one-year limitation period are actions on secured claims (§ 9391), insurance claims (§ 550 et seq.) and for certain claims made by public entities.

[11]Section 9102; see also section 9352, subdivision (a) ("The filing of a claim . . . tolls the statute of limitations otherwise applicable to the claim until allowance, approval or rejection.").

the one-year limitation period of Code of Civil Procedure section 366.2, a creditor will be forever barred from asserting a claim against the decedent.[12]

Although restrictive, these short limitation periods protect a decedent's heirs, beneficiaries and devisees from unknown and unfiled claims. They also enable the expeditious administration of probate estates.

A properly filed claim in the probate proceeding is crucial for another reason as well. A timely filed claim is a condition precedent to filing an action against a decedent's estate.[13] In the event the personal representative rejects a creditor's claim, the claim is barred unless the creditor files suit against the decedent's estate within three months after rejection.[14] A creditor's claim may be deemed rejected at the creditor's option if the personal representative or court has refused or neglected to act on the claim within 30 days after the claim was filed.[15]

Where a timely action is filed against the estate on a rejected claim, the claim is considered a "disputed debt."[16] The Probate Code specifies numerous methods to provide for "disputed" and other unresolved debts. For example, in its discretion the probate court may approve an agreement by the interested parties which provides for resolution of debts which are not yet due, contingent or disputed.[17] In the alternative, the court may require the personal representatives to deposit sufficient sums to satisfy conditional, contingent or disputed debts which are subject to withdrawal only by court

---

[12]Section 9253 ("A claim barred by the statute of limitations may not be allowed by the personal representative or approved by the court or judge"); see also *Bradley v. Breen* (1999) 73 Cal.App.4th 798, 804 [86 Cal.Rptr.2d 726] (Code Civ. Proc., § 366.2 barred the appellants' action for equitable indemnity although their cause of action had not even accrued until long after the one-year statute of limitations had run).

[13]Section 9351 ("An action may not be commenced against a decedent's personal representative on a cause of action against the decedent unless a claim is first filed as provided in this part and the claim is rejected in whole or in part."); *Heywood v. Municipal Court* (1988) 198 Cal.App.3d 1438, 1444, fn. 2 [244 Cal.Rptr. 435] (filing a lawsuit does not satisfy the statutory requirement of filing a timely claim against the decedent's estate even though filing suit may give notice of the amount and nature of the claim).

[14]Section 9353, subdivision (a). In the alternative, a creditor's recourse is to request summary determination of the dispute by reference to a judge or temporary judge, or through arbitration. (*Ibid.*)

[15]Section 9256 ("If within 30 days after a claim is filed the personal representative or the court or judge has refused or neglected to act on the claim, the refusal or neglect may, at the option of the creditor, be deemed equivalent to giving a notice of rejection on the 30th day.").

[16]Section 11460, subdivision (b) ("A debt is 'disputed' if it is a claim rejected in whole or in part under Part 4 (commencing with Section 9000) and is not barred under Section 9353 (requiring suit be timely filed after claim rejected) as to the part rejected.").

[17]Section 11462.

order when such debts become "absolute, established, or due."[18] In appropriate circumstances, the court retains the inherent power to order the administration of the estate to continue "until the contingency, dispute, or passage of time of a debt that is contingent, disputed, or not due is resolved."[19]

Where a creditor of a decedent's probate estate secures a money judgment on a disputed claim, the judgment conclusively establishes the validity of the claim for the amount of the judgment.[20] To secure payment on the judgment the creditor need only file an abstract of judgment in the probate proceedings.[21] Subject to exceptions not relevant to this case, money judgments against the decedent, or the personal representatives in their representative capacities, on a claim against the decedent's probate estate are not enforceable against the estate under the Enforcement of Judgments Law.[22] Instead, judgments secured against the decedent after his or her death are to be paid in the normal course of the administration of the estate.[23]

Beginning with section 19000, the Probate Code sets forth a series of provisions for payment of claims, debts and expenses from the assets of a revocable trust of a deceased settlor. These provisions nearly parallel the claims procedure for probate estates. The trust claims procedure is very similar to the probate claims procedure regarding, for example, the manner of giving notice to potential creditors, provisions for filing claims, restrictive time periods for filing claims, the approval, acceptance, rejection or settlement of claims, and the like. As with the probate estate claims procedure, if a creditor does not file a timely claim in the trust proceedings in response to a notice, the creditor's cause of action against the assets of the trust are barred.[24] Also similar to the probate claims procedure, if the trustee rejects a

---

[18]Section 11463.

[19]Section 11467.

[20]Section 9301 ("When a money judgment against a personal representative in a representative capacity becomes final, it conclusively establishes the validity of the claim for the amount of the judgment. The judgment shall provide that it is payable out of property in the decedent's estate in the course of administration. An abstract of the judgment shall be filed in the administration proceedings").

[21]Section 9301.

[22]Code of Civil Procedure section 695.010 et seq.; see also 12 Witkin, Summary of California Law (9th ed. 1990) Wills and Probate, section 588, pages 614-615.

[23]Section 9300, subdivision (a); see also Ross and Moore, California Practice Guide: Probate (The Rutter Group 1999) paragraph 8:268, pages 8-86.5 to 8-86.6 (rev. # 1 1998).

[24]Section 19004, subdivision (c) ("The holder of a claim may not maintain an action on the claim against the trust unless the claim is first filed as provided in this part.").

creditor's claim, the creditor must file an action on the claim within 90 days after notice of rejection.[25]

However, there are certain significant differences between the two claims procedures. In the event probate proceedings are opened to administer a decedent's estate assets, trustees are statutorily precluded from initiating the trust claims procedure.[26] Section 19003, subdivision (a) specifies trustees cannot initiate the claim-filing procedure against a trust by sending notices to potential creditors or by publishing notice of the settlor's death, if the trustees have actual knowledge of a petition to administer the estate of the deceased.[27]

The significance of this provision is that a creditor need only file one claim, and if there are probate proceedings, the claim may only be filed in the probate proceeding for proper administration. In this manner the Legislature has ensured the administration of estates will be organized and focused. Providing a decedent's creditors only the one option of filing claims in the probate proceeding furthers the goal of identifying all potential claimants against the decedent's assets within a few months, or at maximum, one year after death. In this manner estates, whether probate or trust, are informed of, and can prepare contingency plans for, all potentially viable claims.

The other significant difference between the two claims procedures is the provision allowing payment from trust assets for expenses or claims in the event probate assets are insufficient. In the event the assets of a probate estate are insufficient to satisfy creditor claims (or estate expenses), such claims may be paid from assets placed in the decedent's revocable trust which could have otherwise been reached during the settlor's lifetime.[28] Section 19001, subdivision (a) of this division provides "[u]pon the death of

---

[25]Section 19255, subdivision (a).

[26]Section 19003, subdivision (a); Depper and Bernstein, California Trust Administration, (Cont.Ed.Bar 2d ed. 2000) Creditors' Rights Against the Trust and Beneficiaries, section 10.11, pages 452-453; Ross and Moore, California Practice Guide: Probate, *supra*, paragraph 2:117.4, page 2-76.9 (rev. # 1 2000).

[27]Section 19003, subdivision (a) provides: "At any time following the death of the settlor, and during the time that there has been no filing of a petition to administer the estate of the deceased settlor in this state of which the trustee has actual knowledge, the trustee may file with the court a proposed notice to creditors. Upon the court's assignment of a proceeding number to the proposed notice, the trustee shall publish and serve notice to creditors of the deceased settlor in the form and within the time prescribed in Chapters 3 (commencing with Section 19040) and 4 (commencing with Section 19050). That action shall constitute notice to creditors of the requirements of this part."

[28]See, e.g., *Bank One Texas v. Pollack* (1994) 24 Cal.App.4th 973, 980 [29 Cal.Rptr.2d 510] (where judgment secured prior to settlor's death, the judgment creditor could levy a writ of

a settlor, the property of the deceased settlor that was subject to the power of revocation at the time of the settlor's death is subject to the claims of creditors of the deceased settlor's estate . . . to the extent that the deceased settlor's estate is inadequate to satisfy those claims and expenses." There is no reciprocal provision in the trust claims procedure for creditors of a trust to assert claims against probate estate assets.

We now apply these various provisions to the circumstances of the present case.

II. *By Filing a Timely Claim in Probate, and Thereafter Filing a Timely Action Against the Estate on Its Claim, AMCIG Satisfied All Relevant Statutes of Limitation, Entitling It to Reach Trust Assets Without Filing a Separate Action Against the Trustees.*

█ Hylwa and Dobler contend AMCIG's attempt to reach trust assets is untimely. They claim AMCIG failed to file suit against them *in their capacity as trustees* within one year as required by Code of Civil Procedure section 366.2 and also failed to sue them *in their capacity as trustees* within three months after its claim was deemed rejected as required by section 9353, subdivision (a). Hylwa and Dobler argue if AMCIG wanted to subject the trust estate to liability for the balance of its judgment, then it was incumbent on AMCIG to first name them, as trustees, as defendants in a timely filed suit. Because AMCIG did not do so, Hylwa and Dobler claim the trial court erred in finding AMCIG satisfied the applicable statutes of limitation by filing a timely claim and action against Dr. Hylwa's probate estate.

There is no dispute AMCIG filed its creditor's claim against Dr. Hylwa's probate estate on March 18, 1994, and was thus within the statutory period for filing creditor claims against a probate estate.[29] It is also undisputed AMCIG satisfied the statutory requirement of filing suit on its claim within three months after Hylwa and Dobler "rejected" its claim.[30]

Apparently, the probate court did not require Hylwa and Dobler to post a bond or deposit $800,000 of the claimed $1.1 million in estate assets

execution directly on trust assets which were subject to revocation during the settlor's lifetime); *Heywood v. Municipal Court, supra,* 198 Cal.App.3d 1438, 1446 (a writ of execution was properly levied against assets of the trust which were subject to the decedent's power of revocation at the time of his death where the plaintiff secured the judgment prior to the settlor's death).

[29]Section 9100, subdivision (a)(1).
[30]Section 9353, subdivision (a).

pending resolution of AMCIG's disputed debt. It appears the court instead ordered administration of the estate continued until the dispute was resolved.[31] Doing so ensured the court retained jurisdiction to oversee the ultimate disposition of AMCIG's claim.

After five years of litigation, AMCIG received a judgment against Dr. Hylwa for over $800,000. Neither side claims there is any specific limitations period for resolving "disputed claims." This money judgment conclusively established the validity and amount of AMCIG's claim against Dr. Hylwa.[32] Thus, when the abstract of judgment was filed with the probate court, the court necessarily had to approve what had initially been a deemed rejected claim.

In the present case the probate estate had insufficient assets to satisfy the money judgment in full. Accordingly, AMCIG was entitled to attempt to have its judgment satisfied from trust assets that were subject to Dr. Hylwa's power of revocation during his lifetime.[33] AMCIG filed its request for payment from trust assets less than a month after the probate court granted Hylwa's and Dobler's petition to close the probate estate. Hylwa and Dobler do not argue AMCIG's request for payment from trust assets was untimely.

Instead, Hylwa and Dobler only claim the request for payment is time-barred because neither the trust nor trustees were ever named parties defendant in AMCIG's lawsuit on its claim. Their argument does not find support in the statutory scheme.

A judgment against a decedent becomes a valid claim against both the decedent's estate and, where necessary, against assets placed in an inter vivos trust which was subject to revocation during the settlor's lifetime.[34] In the event estate assets are insufficient to satisfy creditor claims of the deceased, section 19001 provides such claims may be satisfied from assets the deceased settlor placed in a revocable inter vivos trust.[35] Thus, to be entitled to invoke the payment procedure of section 19001, a judgment creditor need only establish it has a money judgment against the decedent/

---

[31] Section 11467.

[32] Sections 9301, 9254, subdivision (b).

[33] Section 19001, subdivision (a).

[34] Sections 9300, 9301, 19300, subdivision (a), 19301; see also *Bank One Texas, v. Pollack, supra,* 24 Cal.App.4th at page 980.

[35] Section 19001, subdivision (a).

settlor.[36] Thereafter, the judgment is paid in the normal course of administration of the trust.[37]

AMCIG's claim and subsequent action were asserted solely against Dr. Hylwa.[38] It was thus unnecessary, as Hylwa and Dobler suggest, for AMCIG to either amend the complaint to name the trust or trustees as parties defendant, or in the alternative, to file a separate action against the trustees.[39] As the probate court correctly noted, a judgment creditor's request for payment from trust assets is not a new proceeding, and thus not an "action" within the meaning of Code of Civil Procedure section 366.2 for purposes of measuring the one-year statute of limitations. Instead, such requests for payment against trust assets, when necessary, are just the penultimate step in the process initiated by filing the original claim against the decedent in the probate proceedings.

Because there was no need to file another action against Hylwa and Dobler in their capacities as trustees of the trust, AMCIG's timely filed claim and action under the probate claims procedure made its claim for payment on its money judgment under section 19001 timely as well.

As noted, a creditor need only file a single claim, and must do so in the probate proceedings if the decedent has a probate estate. The Legislature's desire for orderly and expeditious administration of estates would be quickly defeated if creditors were required to simultaneously file identical claims against both the decedent's estate and trust. If the claims procedures were overlapping it would create confusion and delay, increase costs, and waste judicial resources. Requiring all creditors to file claims in a single proceeding, and within the same restrictive time periods, also furthers the legislative goal of protecting a decedent's heirs, legatees, or beneficiaries from stale

[36]*Bank One Texas v. Pollack, supra*, 24 Cal.App.4th at page 980.

[37]Section 19300, subdivision (a) ("after the death of the settlor all money judgments against the deceased settlor on a claim against the deceased settlor or against the trustee on a claim against the decedent or the trust estate are payable in the course of administration and are not enforceable against property in the trust estate of the deceased settlor under the Enforcement of Judgments Law . . . .").

[38]See, e.g., *Tanner v. Best's Estate* (1940) 40 Cal.App.2d 442, 445 [104 P.2d 1084] (A decedent's estate is not a legal entity. "It is merely a name to indicate the sum total of the assets and liabilities of a decedent, . . .").

[39]See Code of Civil Procedure section 1908, subdivision (a)(1) ("In case of a judgment or order against a specific thing, or in respect to the probate of a will, or the administration of the estate of a decedent, . . . the judgment or order is conclusive upon the title to the thing, the will, or administration . . . ."); see also *Bank One Texas v. Pollack, supra*, 24 Cal.App.4th at page 980 (once the judgment creditor secured a judgment against the settlor the judgment became a lien against trust assets and it was thus unnecessary to amend the judgment to add the trust as a judgment debtor).

and unknown claims. Under the legislative scheme for processing all claims through a single system, all creditor claims which are untimely as to the decedent's probate estate are similarly time-barred as against trust assets as well. The benefit to trusts is obvious. By employing a single process, trustees enjoy the same protection from unfiled creditor claims which is afforded to personal representatives under the probate claims procedure.[40]

Hylwa and Dobler suggest numerous reasons why permitting creditors to recover from trust assets without first suing the trustees may result in unfairness. They claim the interest of a personal representative defending the decedent's probate estate against a creditor's claim may not be the same as that of a trustee defending trust assets, depending on the size of the respective estates. They point out trustees often owe duties to persons different from the heirs of a probate estate and thus may respond differently to a claim than would a personal representative. They suggest, in some instances an estate administrator may not even be aware of a trust's existence and thus may not adequately appreciate the consequences of his or her decisions to accept or reject claims. In other instances, the administrator of an estate may be too unsophisticated to grasp the potential consequences of failing to adequately defend a claim against the estate. Hylwa and Dobler thus argue that, in fairness, any claims against trust assets ought to be defended by the trustee. They argue it creates an unfair surprise for a trustee to be presented with a request for payment years after a probate estate opened, especially where the trustees did not have the opportunity to personally defend the action.

First, we have to assume any reasonably competent trustee would learn of the settlor's death within a reasonable amount of time. A reasonably competent trustee would then take steps to discover whether probate proceedings had opened, and if so, the nature and extent of all claims made within the statutory period against the estate. Then, secure in the knowledge no claims other than claims timely filed in the probate proceedings could ever be asserted against trust assets, a reasonably competent trustee would make provisions or arrangements to provide for disputed, or other unresolved debts.

In any event, and whatever else we may think of the merits of Hylwa and Dobler's arguments in other circumstances, they are clearly inapplicable to

---

[40]Section 19006, subdivision (b) provides: "If the personal representative of the deceased settlor's estate has published notice under Section 8120 and given notice of administration of the estate of the deceased settlor . . . , the protection from creditors afforded the personal representative of the deceased settlor's estate shall be afforded to the trustee and to the beneficiaries of the trust."

the present case. Here, Hylwa and Dobler were both the administrators of Dr. Hylwa's estate and are the trustees of his trust. They necessarily had actual knowledge not only of both estates, but also of every claim which could potentially have been asserted against Dr. Hylwa's assets, by virtue of their knowledge of all claims accepted, approved or rejected in the probate proceedings. Specifically, they had actual knowledge of any and all disputed claims against Dr. Hylwa, which if the probate estate was inadequate, could be asserted against assets the doctor placed in his revocable trust. Thus, there is no reason to question either their lack of notice or knowledge, or their incentive to vigorously defend every disputed claim, including the present one.

Moreover, to accept Hylwa and Dobler's argument would destroy the basic premise underlying the legislative scheme for the expeditious and orderly administration of estates. Requiring a creditor to name both administrators of the decedent's estate and trustees of the decedent's trust in any action on a rejected claim would prolong litigation and delay distribution to heirs, beneficiaries, legatees and the like. The expense of adding the additional parties defendant would also severely deplete both estates' assets. Furthermore, where probate estate assets are sufficient to satisfy expenses and claims, participation by the trustees would be a wholly unnecessary and wasteful process.

We reject their proposed blanket requirement of joining all potential administrators and trustees in any action against a decedent's probate estate as illogical, counterproductive and contrary to the Legislature's expressed desire for the expeditious and orderly administration of all claims against a decedent.[41]

Hylwa and Dobler cite the decision in *Anderson v. Anderson*[42] to demonstrate the appropriateness of naming a defendant in his representative capacities as both the executor of an estate and as trustee of the decedent's revocable trust. The defendant happened to be named in both his representative capacities because the plaintiff's action involved not only a demand

---

[41]Of course, if there is no probate estate and no probate proceedings are opened, a trustee of any of the decedent's trusts may initiate the procedure for making claims against the trust. (§ 19003.) Using this parallel system any action on a claim seeking to reach trust assets would then necessarily have to name the trust and/or trustees.

However, the trust claims procedure was not implicated in this case at all. Thus, there was no occasion to bring suit against the trust or trustees under section 19251, subdivision (b). In fact, as noted, because there was a probate proceeding, Hylwa and Dobler were statutorily precluded from utilizing any of the provisions regarding claims made against trusts. (§ 19003.)

[42]*Anderson v. Anderson* (1995) 41 Cal.App.4th 135 [48 Cal.Rptr.2d 642].

for a money judgment against the probate estate, but also alleged the defendant had breached his fiduciary duty as trustee of the decedent's trust. The *Anderson* decision made no comment on the appropriateness of naming the defendant in each of his representative capacities.[43] Thus, the *Anderson* decision provides no direct support for Hylwa and Dobler's position.

Reliance on the decision in *In re Marriage of Perry*[44] is similarly unavailing. *In re Marriage of Perry* concerned a parent's request to modify an order for child support. The family law court had entered its order for child support prior to the former husband's death. The husband had been severely injured in an auto accident and had obtained a structured settlement, which provided a stream of income. Shortly before his death the former husband transferred all his interest in the settlement to a revocable inter vivos trust. The trustee was joined in the family law proceedings and the court ordered an increase in child support payments to be paid from the former husband's trust assets.[45] Although not specifically mentioned by the Court of Appeal, its opinion suggests the settlement funds in the trust were the decedent's only assets. Thus, if there was no probate estate the only available method to reach those funds would have been to sue the trust or, as the former wife chose to do, join the trustee in the family law proceedings.

Neither of these decisions is applicable in this context. Moreover, neither decision supports Hylwa and Dobler's argument trustees must be timely sued as a condition precedent to asserting claims against trust assets.

On the other hand, we agree with Hylwa and Dobler AMCIG's separately filed petition for payment of its judgment against Dr. Hylwa was at least initially procedurally defective. However, this minor misstep is of no legal significance.[46] The court dismissed AMCIG's petition without prejudice and expressly permitted AMCIG to refile its request for payment in the then pending trust administration proceeding. AMCIG's initial mistake did not, as the trustees argue, transmute the request for payment into a wholly new— and thus time-barred—action against Dr. Hylwa in violation of the one-year statute of limitations of Code of Civil Procedure section 366.2 and section 9353.

In short, AMCIG satisfied every applicable statute of limitations during the claim process provided in the Probate Code for the orderly administration of estates. Accordingly, we reject Hylwa and Dobler's argument

---

[43]*Anderson v. Anderson, supra*, 41 Cal.App.4th at page 137.

[44]*In re Marriage of Perry* (1997) 58 Cal.App.4th 1104 [68 Cal.Rptr.2d 445].

[45]*In re Marriage of Perry, supra*, 58 Cal.App.4th at page 1107.

[46]See, e.g., *Estate of Heggstad* (1993) 16 Cal.App.4th 943, 952 [20 Cal.Rptr.2d 433] (rejecting formal approach to claims of error in labeling petitions for probate court instructions).

AMCIG's request for satisfaction of its money judgment from trust assets is time-barred.

## DISPOSITION

The order of the probate court is affirmed. AMCIG to recover its costs of appeal.

Lillie, P. J., and Woods, J., concurred.