**2024 UT App 97**

## THE UTAH COURT OF APPEALS

TODD HARRIS,
Appellant,
*v.*
DEPARTMENT OF HEALTH AND HUMAN SERVICES,
OFFICE OF RECOVERY SERVICES,
Appellee.

Opinion
No. 20220252-CA
Filed July 18, 2024

Third District Court, Salt Lake Department
The Honorable Kara Pettit
No. 210903461

Edward T. Wells, Attorney for Appellant

Sean D. Reyes, Erin T. Middleton, and William W.
Miller, Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES RYAN D. TENNEY and AMY J. OLIVER concurred.

MORTENSEN, Judge:

¶1     When Tyrone Boyd Webber didn't pay his child support, Utah's Office of Recovery Services (ORS) obtained a lien against Webber's then-existing real property interests. The property was held in two revocable trusts; Webber was the settlor of one of the trusts. Webber used the property as collateral for a personal loan, and he defaulted. Todd Harris, who was on notice of ORS's lien, subsequently purchased the property at a sale. Harris then claimed that the ORS lien was unenforceable and sought to quiet title. The district court rejected Harris's claim. We do too and affirm the district court's grant of ORS's motion for summary judgment.

BACKGROUND[1]

¶2      In 2011, ORS,[2] a division of the Utah Department of Health and Human Services, obtained a "properly recorded" lien against Webber for unpaid child support. At that time the lien was "upon real property" Webber "owned in the county where it was recorded," which was Salt Lake County. Then in 2012, a divorce decree was formally entered between Webber and Mary Ann Lauritzen, formerly Webber. The divorce decree included a judgment for payment of Webber's past-due child support. Lauritzen renewed that judgment in 2019.

¶3      This appeal centers on whether the judgment lien obtained by ORS attached to land (the Property) owned by Webber prior to his divorce. At the time ORS obtained the judgment lien in 2011, the Tyrone Boyd Webber Trust and the Mary Ann Webber Trust held legal title to the Property. Webber was both a trustee and settlor of his trust and a trustee of Lauritzen's trust. The trusts retained legal title, but as part of the divorce decree, Lauritzen "transferred her beneficial interest in the [P]roperty" to Webber.

¶4      In 2016, Webber entered into a trust deed note on the Property to secure a personal loan from a lender (Lender). Lender

---

1. "In reviewing a district court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and recite the facts accordingly." *Ockey v. Club Jam*, 2014 UT App 126, ¶ 2 n.2, 328 P.3d 880 (cleaned up).

2. Among other services, ORS collects child support and enforces support orders. Utah Code § 78B-12-113(1)(a); *Child Support Services*, Utah Dep't of Health & Human Services, https://ors.utah.gov/child-support/#ubermenu-column [https://perma.cc/586A-BC26].

foreclosed on the Property and held a trustee sale in 2019. Harris purchased the Property at that sale.

¶5 In 2021, Harris filed a complaint seeking to quiet title and obtain a declaratory judgment that he was "the sole owner to all rights, title, and interest" in the Property and that ORS's judgment lien therefore had "no legal effect" as to his rights as sole owner. He argued that the lien was unenforceable because the statute of limitations had run on the claim without a renewal. Subsequently, Webber and Lauritzen, individually and as trustees of the trusts, disclaimed any interest in the Property. ORS filed a motion for summary judgment, arguing that the statute of limitations had not run, making a declaratory judgment or an order quieting title inappropriate because ORS's "right to a judgment lien" against the Property was "unconditional." In his opposition, and again in his own motion for summary judgment that he later filed, Harris argued for the first time that the Property was owned by the trusts, rather than by Webber as an individual, and therefore was not subject to ORS's judgment lien. Harris conceded that the statute of limitations had not run.

¶6 The district court granted ORS's motion for summary judgment, and it denied Harris's. The court quieted title in the Property to Harris, "subject to [ORS's] lien." The court determined that Webber held beneficial interest in the Property as the settlor of his trust. Therefore, citing a Utah statute, the court concluded that the Property was "subject to [ORS's] judgment lien regardless of the naked paper title." *See* Utah Code § 75-7-505(1) ("During the lifetime of the settlor, the property of a revocable trust is subject to the claims of the settlor's creditors."). The court determined that no "other step was needed" for ORS's judgment lien to attach to the Property. Harris appeals.

ISSUE AND STANDARD OF REVIEW

¶7 The issue before us on appeal is whether the district court correctly granted ORS's motion for summary judgment. When

reviewing a district court's grant of summary judgment, we review the court's "legal conclusions and ultimate grant or denial of summary judgment for correctness," and we view "the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *JENCO LC v. Perkins Coie LLP*, 2016 UT App 140, ¶ 10, 378 P.3d 131 (cleaned up). In so doing, "we grant no deference to the district court's legal conclusions." *Id.* (cleaned up).

ANALYSIS

¶8      Harris argues that the district court erred in granting ORS's motion for summary judgment because the child support judgment lien did not automatically attach to the Property. Harris contends that, instead, ORS was required to sue the trusts prior to the Property being sold. We disagree.

¶9      With one exception not applicable here, "on and after the date it is due" a missed child support payment becomes "a judgment with the same attributes and effect of any judgment of a district court." Utah Code § 78B-12-112(3)(a); *see also id.* § 26B-9-214(1).[3] That judgment "constitute[s] a lien against the real property of the obligor upon the filing of a notice of judgment-lien in the district court where the obligor's real property is located." *Id.* § 26B-9-214(2)(a). Notice must specify the "amount of past-due support" and comply with the procedural requirements of section 78B-5-202, *see id.* § 26B-9-214(2)(a)(i)–(ii), which governs all judgment liens, *see id.* § 78B-5-202. State agencies, such as ORS, are "exempt from the recording requirement." *Id.* § 78B-5-202(7)(d). "After receiving notice that a support lien has been filed" by ORS, "no person in possession of any property which may be subject to that lien may pay over, release, sell, transfer, encumber, or convey

---

3. The Utah Code has been renumbered since the litigation in this case began. For convenience, we cite the current code as no changes to the statutes are determinative in this case.

that property to any person other than" ORS without a release, waiver, or court order. *Id.* § 26B-9-215(1). However, if the property is transferred, a child support judgment received by ORS becomes "effective and enforceable as a lien against the real property interest of any third party relying on the public record," such as Harris in this case, as soon as the judgment is "docketed in the district court." *Id.* § 78B-12-112(5).

¶10    Here, the district court determined that ORS properly filed a lien against Webber in January 2011, which the court later docketed. Harris did not dispute this fact below or on appeal. Furthermore, Harris has not disputed that any property owned by Webber in Salt Lake County was subject to the lien. Therefore, our threshold question in determining whether summary judgment was properly granted is whether Webber had a real property interest in the Property at the time Harris purchased it.

¶11    As discussed, real property subject to a judgment lien includes all real property in the county where the judgment was recorded that is "owned or acquired at any time by the judgment debtor during the time the judgment is effective." *Id.* § 78B-5-202(7)(c)(ii). Because the judgment lien statutes do not provide a definition for "real property," our supreme court has looked to the real estate title of the Utah Code, which defines "real property" as "any right, title, estate, or interest in land." *Capital Assets Fin. Services v. Maxwell*, 2000 UT 9, ¶ 14, 994 P.2d 201 (quoting Utah Code § 57-1-1(3)). Thus, for purposes of the judgment lien statutes, a "lien attaches to a debtor's beneficial and equitable property interests, even if the debtor has no record title." *Id.* ¶ 15 (cleaned up). Such interests are so essential that where equitable and beneficial property interests are absent when a debtor merely holds bare legal title in property, a judgment lien does "not attach to a debtor's bare legal title in property." *Id.* (cleaned up); *see also Lund v. Donihue*, 674 P.2d 107, 109 (Utah 1983) (per curiam) ("Whenever one holds the naked legal title, having no beneficial interest, there is nothing to which

the judgment lien can attach." (cleaned up)); *Belnap v. Blain*, 575 P.2d 696, 699 (Utah 1978).

¶12    In *Butler v. Wilkinson*, 740 P.2d 1244 (Utah 1987), our supreme court determined that though a seller retains legal title for security under an installment land sale contract, a purchaser's equitable interest in that property is still subject to a judgment lien because the purchaser "may mortgage his or her equity in the land, assign it to a third party as security for a loan, or sell the interest by way of an assignment." *Id.* at 1254 (cleaned up); *accord Bill Nay & Sons Excavating v. Neeley Constr. Co.*, 677 P.2d 1120, 1121 (Utah 1984) ("The interest of a purchaser under a real estate contract is an interest in real property that can be mortgaged. Upon the same reasoning, this equitable interest is also subject to [a] judgment lien . . . ." (cleaned up)).

¶13    Here, while the trusts held legal title to the Property, Webber, as settlor of his trust, held a beneficial interest in the Property. And, as part of the divorce decree, Lauritzen, as settlor of her trust and trustee of both trusts, transferred any beneficial interest she had in the Property to Webber. Furthermore, Webber then used that beneficial interest to secure a personal loan by issuing a trust deed note on the Property. All these actions reflect that Webber and his creditor understood that the Property was his to encumber. Harris does not dispute these facts.

¶14    The Utah Uniform Trust Code states that "[d]uring the lifetime of the settlor, the property of a revocable trust is subject to the claims of the settlor's creditors." Utah Code § 75-7-505(1).[4] This principle is "based on the sound public policy of basing the rights of creditors on the substance rather than the form of the debtor's property rights." Restatement (Third) of Trusts § 25

---

4. Given that the record does not include any trust documents, we will assume that the trusts are revocable because neither party argues otherwise and both cite this section of the code in their briefing.

cmt. e (Am. L. Inst. 2003). Policies of this nature prevent debtors from "using a trust as a device by which [they] can retain for [themselves] and enjoy substantially all of the advantages of ownership and at the same time place it beyond the legitimate claims of [their] creditors." *Leach v. Anderson*, 535 P.2d 1241, 1243 (Utah 1975).

¶15 Because Webber was the settlor of his revocable trust and held the sole beneficial interest in the Property after the divorce, the Property was subject to Webber's creditors. His beneficial interest was the effective equivalent of ownership, as evidenced by his use of the Property as collateral to secure a personal loan. Webber cannot use the trusts for his personal benefit with one hand while using them as a shield against his creditors with the other hand in an effort to avoid his child support obligations. The reason that Harris was even able to purchase the Property at the trustee sale is that Webber used the Property as collateral to obtain a personal loan and fell behind on the payments.

¶16 While Harris does not dispute that ORS has a valid and enforceable judgment lien against Webber, he argues that the lien did not automatically attach to the Property as the Property was partially owned by the trust rather than by Webber as an individual. He argues that in order for the lien to attach to the Property, ORS was required to bring a claim directly against the Tyrone Boyd Webber Trust yet Harris provides no authority supporting this contention—in fact, the authority he does provide cuts against his argument.[5] Harris begins with a brief citation to

---

5. Harris provides additional authority and argument that ORS's judgment lien did not automatically attach to the Property as owned by the trusts because Webber was the trustee. While it is true that under Utah law "[t]rust property is not subject to personal obligations of the trustee," Utah Code § 75-7-507, Webber was also the settlor of his trust, and property held in a "revocable trust *is* subject to the claims of the settlor's creditors"

(continued…)

spendthrift trust statutes before moving on to acknowledge that the trusts at issue here are revocable trusts and citing Utah Code section 75-7-505(1). Throughout his argument, he vacillates between authority discussing spendthrift and authority discussing revocable trusts without explaining or even acknowledging that there is an important difference between the two. Not only does his argument misconstrue section 75-7-505(1), but it also ignores the remaining body of relevant child-support and judgment-lien statutes we have outlined above. Nothing in either the child-support or judgment-lien statutes requires ORS, a government-agency creditor, to file separate litigation in order for its child-support lien to attach to the Property. In fact, section 78B-5-202(7)(d) removes the requirement for state agencies to fulfill the notice requirement, making it even easier—indeed automatic—for the judgment lien to attach.

¶17   Section 75-7-505(1) explains that property in a revocable trust is "subject to the claims of the settlor's creditors." Harris argues that this statutory language merely grants "ORS the *right* to make a claim against the trust property" but it "does not create a lien" in and of itself. (Emphasis added.) However, the statute does not mention creditors of the trust or claims against the trust; instead, it explicitly mentions the *settlor's* creditors, and a party with a judgment lien against the settlor is exactly that. And, despite the Property being held in a revocable trust, under Utah law Webber's beneficial interest in that property is still subject to the valid and enforceable lien, without ORS directly suing either trust. This reading of the statute—that a judgment lien attaches automatically to a debtor's interest in a revocable trust—has been followed by other courts interpreting similar statutes. *See Bank One Tex., NA v. Pollack*, 29 Cal. Rptr. 2d 510, 513 (Ct. App. 1994) (holding that a judgment lien against the deceased settlor of a

---

during the lifetime of the settlor, *id.* § 75-7-505(1) (emphasis added). Because Webber is the settlor and holds all the beneficial interest of his trust, Harris's argument against attachment due to Webber's other role as trustee carries no weight.

revocable trust attached to the assets of the trust without the need to amend the judgment to include the trust as a debtor); *Bluff Ventures LP v. Chicago Title Ins. Co.*, 950 F.2d 139, 145 (4th Cir. 1991) (holding, as an alternative ground, that because the debtors could "reach the trust property," the judgment lien attached to that property and stating that "a judgment lien creditor should be allowed to stand in the shoes of [a] judgment debtor so as to reach all assets that could be reached by the debtor" (cleaned up)). Facing a similar scenario, the Colorado Supreme Court rejected the argument Harris now makes and determined that a bank creditor is not required to file a separate action against a revocable trust in order for its judgment lien to attach. *Pandy v. Independent Bank*, 2016 CO 49, ¶ 21, 372 P.3d 1047 (en banc). The Colorado court reasoned that because the debtor had the "functional equivalent" of an ownership interest in the revocable trust's assets, the bank was not required to file a separate action in order to subject the property to the lien. *Id.* ¶¶ 16, 30 (cleaned up).

¶18   Harris further argues that a trust creates a "distinct legal entity," which we presume he argues to support his contention that a separate claim must be brought to access trust property. However, this and other broad, often unexplained statements made by Harris do not address the specific facts and circumstances before us now. As we've demonstrated—and the authority Harris cites supports—regardless of whether a trust creates a separate entity, a settlor's lack of legal title in the assets of a revocable trust does not shield trust property from the settlor's creditors. *See Jessup v. Five Star Franchising LLC*, 2022 UT App 86, ¶ 54 n.10, 515 P.3d 466 (explaining that a settlor of a revocable trust is bound by the language of the trust instruments but also acknowledging that "a settlor's creditors can access property held in a revocable trust—a fact established in Utah by statute").

¶19   Harris's final argument is that an affirmance from us "would turn property law on its head" and "overturn centuries of common law which has recognized a trust as an entity separate

from its settlors and beneficiaries and required an action against a trust" before a creditor can access trust property. But neither scenario in this doomsday argument is true, and it is instead Harris's argument that would upend the present state of the law. Harris argues that our affirmance here would allow creditors moving forward to "hold [a] trust's property hostage" by claiming that its judgment lien automatically attached. He contends that "anytime a trust wished to sell property, the buyer would need to be assured there were no existing claims or liens against any settlor or beneficiary of the trust." But his explanation is an accurate description of how liens already work and the purpose of the entire title insurance industry—to confirm for buyers that there is no cloud on a property's title. This does not place an undue burden on buyers as Harris argues, because it is already the buyer's burden when on notice of adverse claims to conduct an investigation into whether there are any defects in the title. *See Butler v. Wilkinson*, 740 P.2d 1244, 1259 (Utah 1987) (holding that buyers who were aware of a judgment, "[t]o be in good faith, . . . had a duty to make a reasonable investigation as to the existence of [the debtor's] rights" to the property). That is particularly true here considering Harris never argues that he was unaware of the lien at the time of purchasing. A buyer who is a good-faith purchaser without notice of the lien may very well have a claim against the settlor of a trust, *see Salt Lake County v. Metro West Ready Mix, Inc.*, 2004 UT 23, ¶ 13, 89 P.3d 155, but that issue is very different from the one before us—which is whether the lien attached at all.

¶20   Furthermore, the idea that property will be held "hostage" is unnecessarily pejorative as this is simply the way a lien functions—exactly as it was intended to. When a lien attaches to property, the creditor is not required to immediately act, but the lien instead "reserve[s] a place in line for" the creditor "to satisfy that judgment from any subsequent sale of any property belonging to the person against whom the judgment was obtained." 46 Am. Jur. 2d *Judgments* § 328 (2024). While the creditor may choose to immediately "pursue[] a writ of execution

or a foreclosure action," it is not required to do so, so long as the judgment has not expired. *Gildea v. Wells Fargo Bank, NA*, 2015 UT 11, ¶ 30, 347 P.3d 385. Thus, we reject Harris's argument.

CONCLUSION

¶21 The district court properly granted summary judgment in favor of ORS because the Property purchased by Harris was subject to the judgment lien. We accordingly affirm.

———————