[No. B162954. Second Dist., Div. Seven. Mar. 22, 2004.]

ARLUK MEDICAL CENTER INDUSTRIAL GROUP, INC., Plaintiff and Appellant, v.
LORE DOBLER et al., Defendants and Respondents.

1326

**1328**

COUNSEL

James S. Link; The Law Offices of Alexander E. Macksoud and Alexander E. Macksoud for Plaintiff and Appellant.

Wiezorek, Rice & Lovelace and William R. Moore for Defendants and Respondents.

OPINION

**PERLUSS, P. J.**—Pursuant to Probate Code section 19001,[1] the assets in a revocable living trust of a deceased settlor are subject to the claims of the creditors of his or her probate estate to the extent the estate itself is inadequate to satisfy those claims. In light of this potential liability, does the trustee of such a trust have a duty, following the death of the settlor, to preserve trust assets for the benefit of creditors with claims pending against the deceased settlor's probate estate? We hold the trustee's only duty to such creditors is to refrain from affirmative misconduct that defeats the creditors' reasonable expectation for a recovery from trust assets.

## INTRODUCTION

Arluk Medical Center Industrial Group, Inc. (AMCIG) filed a claim in the probate proceedings for one of its three founders, Dr. Theodore M. Hylwa, asserting that Dr. Hylwa had failed both to contribute to AMCIG all revenue earned from his practice and to obtain life insurance naming AMCIG as beneficiary as required by Dr. Hylwa's employment agreement with AMCIG. Although AMCIG finally prevailed on its contract claims after five years of litigation, the probate estate had insufficient assets to pay the judgment, which, including attorney fees and costs, totaled more than $800,000. AMCIG then sought to have the unpaid balance of its judgment satisfied from assets of the revocable inter vivos trust Dr. Hylwa had created. The trial court ordered the trustees to pay the unsatisfied portion of AMCIG's judgment from Dr. Hylwa's trust assets, and we affirmed that decision. (*Dobler v. Arluk Medical Center Industrial Group, Inc.* (2001) 89 Cal.App.4th 530 [107 Cal.Rptr.2d 478] (*Dobler*).)

When AMCIG returned to the trial court, it learned the trust, which at one time had assets that had been valued at more than $5 million, was insolvent. AMCIG then petitioned to surcharge the trustees for distributing trust assets while AMCIG's breach of contract lawsuit against Dr. Hylwa's estate was still pending. Finding that the trustees had not acted in bad faith, the trial court denied the petition. We affirm.

---

[1] Statutory references are to the Probate Code unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. AMCIG's Contract with Dr. Hylwa

Dr. Hylwa and two other physicians formed AMCIG in 1988, with each physician receiving one-third of the shares of AMCIG. The physicians agreed to provide medical care to AMCIG's patients and to contribute to AMCIG the income received from their services. In 1989 the physicians also agreed AMCIG would purchase term life insurance for each physician shareholder in the amount of $400,000. Upon the shareholder's death the proceeds were to be used to purchase the decedent's stock in AMCIG and to pay corporate debt. Dr. Hylwa apparently did not want term life insurance and entered into a separate agreement with the other shareholders to receive a payment equal to the cost of a $400,000 term life policy and, in return, to purchase a larger whole life insurance policy and provide that AMCIG would receive $400,000 of the death benefit.

Dr. Hylwa died in August 1993. According to AMCIG, immediately after Dr. Hylwa's death it discovered he had breached his contract to obtain life insurance for the benefit of AMCIG. A revocable inter vivos trust created by Dr. Hylwa was the sole beneficiary of his various life insurance policies, which had total death benefits of $3 million. Dr. Hylwa also had allegedly breached his agreement to contribute to AMCIG all income received for his services to AMCIG's patients.

### 2. AMCIG's Claim in the Probate Proceedings

At his death Dr. Hylwa owned assets subject to probate administration. Respondents Richard L. Hylwa and Lore Dobler, who had previously been designated by Dr. Hylwa as the successor trustees for his revocable inter vivos trust,[2] were appointed co-administrators of Dr. Hylwa's probate estate.

In March 1994 AMCIG filed a timely claim in the probate proceedings to recover $750,318.28 as a contract creditor. The probate estate had a beginning inventory valued at $2,182,593.98; the trust had a beginning inventory valued at $4,864,572.00.[3]

The administrators of Dr. Hylwa's probate estate took no action to accept or reject AMCIG's claim for 30 days. AMCIG thus treated the claim as if it had been rejected (§ 9256) and filed a timely lawsuit against the estate.

---

[2] In a proceeding separate from the probate of Dr. Hylwa's estate, Hylwa and Dobler successfully petitioned for court supervision of the trust.

[3] The parties stipulated to these values in connection with the hearing on the petition to surcharge the trustees.

### 3. *The Trustees' Distribution of Assets to the Trust Beneficiaries*

While AMCIG's lawsuit was pending but prior to a final judgment, the trustees made distributions to the beneficiaries of the trust totaling $509,173.31. The last payment to the trust beneficiaries was made on March 27, 1999.

### 4. *AMCIG's Inability to Satisfy the Final Judgment in Its Favor*

On May 25, 1999, after five years of litigation, the court entered judgment in favor of AMCIG and against the estate in an amount exceeding $800,000, including attorney fees and costs. The estate did not appeal and the judgment became final. The following month Hylwa and Dobler, on behalf of the estate, petitioned to close the probate estate. At that time the property remaining in the probate estate was valued at $282,000. After payment of court-approved expenses to administer the estate, which enjoyed a statutory priority, $136,707 remained available to satisfy AMCIG's judgment.

### 5. *AMCIG's Efforts to Satisfy Its Judgment from Trust Assets*

Because the assets in the estate were insufficient to satisfy its judgment, in August 1999 AMCIG filed a petition in the trust proceeding seeking to have the balance of its judgment satisfied from trust assets. The trustees opposed the petition, arguing that, having failed to assert a timely claim against the trustees (as opposed to having asserted a claim in the probate proceedings), AMCIG's claim was time barred. The trial court disagreed and issued a formal order pursuant to sections 19001 and 19300, subdivision (a), instructing the trustees to pay AMCIG in accordance with the ordinary course of administering the trust. On May 25, 2001, this court affirmed, holding that a creditor who filed a timely claim and action against the probate estate and in whose favor a judgment was rendered is not precluded, by virtue of its failure to file a separate claim against the trust, from seeking to satisfy its judgment out of trust assets when the estate is inadequate to satisfy the judgment. (*Dobler, supra,* 89 Cal.App.4th 530.)

### 6. *AMCIG's Petition to Surcharge the Trustees*

Following our decision in *Dobler,* a final accounting for the trust reflected the current market value of trust assets as $100,227.92, with claims for attorney and accounting fees substantially in excess of that amount, leaving the trust insolvent.

On January 11, 2002, AMCIG filed objections to the final accounting and petitioned the court to surcharge the trustees to pay the balance of its

judgment. After a contested evidentiary hearing, the court found that the trustees owed no duty to AMCIG to preserve trust assets before AMCIG became a judgment creditor and, in any event, the trustees had not acted in bad faith in failing to preserve the trust assets. The trial court denied AMCIG's petition to surcharge the trustees. AMCIG filed a timely appeal from the court's order.[4]

## CONTENTIONS

AMCIG contends that the trustees had a duty to preserve trust assets during the pendency of its lawsuit in the estate proceeding and that distribution of assets to trust beneficiaries prior to the resolution of AMCIG's lawsuit subjects the trustees to personal liability to the extent AMCIG's judgment could have been satisfied from trust assets.

## DISCUSSION

### 1. *Standard of Review*

■ The question whether and to what extent a trustee has a legal duty to preserve trust assets while a lawsuit against the estate is pending is a question of law subject to de novo review. (See *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 397 [11 Cal.Rptr.2d 51, 834 P.2d 745]; *Rosenbaum v. Security Pacific Corp.* (1996) 43 Cal.App.4th 1084, 1089 [50 Cal.Rptr.2d 917].)

### 2. *Overview of Creditor's Statutory Right to Assets in a Decedent Settlor's Revocable Living Trust*

#### a. *History of Creditor's Rights to Trust Property Prior to Enactment of Section 19000 et seq.*

Prior to 1986, there was no provision in the Probate Code permitting a judgment creditor of a decedent's estate to recover from property that was held in a living trust subject to the decedent's power of revocation at the time of his or her death. If .the decedent had left his or her estate insolvent by transferring assets to a revocable inter vivos trust, the creditor's sole remedy was a separate action against the estate and the trust on the ground the conveyance was fraudulent. (*Bank One Texas v. Pollack* (1994) 24 Cal.App.4th 973, 980 [29 Cal.Rptr.2d 510], citing *In re Estate of Heigho* (1960) 186 Cal.App.2d 360, 365, 366 [9 Cal.Rptr. 196].) Recognizing that a settlor with the power to revoke a living trust effectively retains full

---

[4] The court's order is a final, appealable order. (See §§ 1304, subd. (a); 17200, subd. (b)(5).)

ownership and control over any property transferred to that trust, the Legislature in 1986 enacted former section 18201, expressly authorizing judgment creditors to reach trust property subject to the settlor's power of revocation at the time of the settlor's death to the extent the settlor's estate was inadequate to satisfy his or her creditors.[5]

Under former section 18201 a judgment creditor, after exhausting the assets in the decedent's probate estate (if any), could satisfy his or her judgment with property that had been in a revocable living trust at the time of the settlor's death whether it remained in the trust or had been distributed to trust beneficiaries. (See, e.g., *Walgren v. Dolan* (1990) 226 Cal.App.3d 572, 580 [276 Cal.Rptr. 554] [creditor entitled to specific performance on settlor's contract to convey land could pursue either the trustees in their representative capacities or the successor beneficiaries if land had been distributed under settlor's trust]; see also Sen. Com. on Judiciary, Analysis of Sen. Bill No. 727 (1991–1992 Reg. Sess.), as introduced May 14, 1991 [noting existing law (former § 18201) permits judgment creditors to pursue trust property distributed to beneficiaries if estate is inadequate to satisfy judgment].)

Concerned that (1) former section 18201 provided no guidelines for creditors of the deceased settlor pursuing trust assets; (2) trust beneficiaries, including surviving spouses, could find their property subject to the claims of unknown creditors of the decedent's estate years after the trust property had been distributed; and (3) the inability to identify creditors of the deceased settlor would lead trustees to withhold distributions from the trust until all potentially applicable statutes of limitations had run (thus defeating one of the main purposes of a living trust—prompt distribution of assets without the delays associated with probate),[6] in 1991 the Legislature repealed section 18201 and recodified it as part of a new and more comprehensive statutory

---

[5] Former section 18201 provided: "Upon the death of a settlor who had retained the power to revoke the trust in whole or in part, the property that was subject to the power of revocation at the time of the settlor's death is subject to the claims of creditors of the decedent settlor's estate and to the expenses of administration of the estate to the extent that the decedent settlor's estate is inadequate to satisfy those claims and expenses." (Stats. 1986, ch. 820, § 40, p. 2798, repealed by Stats. 1991, ch. 992, § 2, p. 4617.)

[6] As stated in the legislative history repealing section 18201: "Existing law [section 18201] currently provides that the property of a revocable trust is subject to the claims of creditors of the deceased settlor to the extent the settlor's estate is insufficient. [¶] . . . [¶] . . . The lack of specificity in this section created uncertainty and can work hardships upon the beneficiaries of any trust against which a claim may be made. [¶] For example, under current law with no procedure to bar claims that are not timely filed, a surviving spouse may remain liable to potential creditors until all potential statutes of limitation have run—which could be an unlimited amount of time in the case of a statute of limitations predicated on 'discovery' of the cause of action. Likewise, a trustee may be hesitant to distribute assets to beneficiaries until all statutes of limitations have run. [¶] . . . [¶] [This bill] would regularize procedures from the perspective of a creditor, trustee and beneficiary as to the rights of creditors to reach revocable trust assets after the death of a settlor [by], [i]n the absence of a probate, . . . establish[ing] an

scheme (Stats. 1991, ch. 992, § 3, enacting part 8, division 9 of the Probate Code, §§ 19000–19403), designed to provide trustees with an optional procedure for identifying and limiting creditor claims when a probate proceeding has not been initiated.[7]

 b. *Section 19000 et seq. Authorizes an Optional Trust Claims Procedure to Identify and Limit Creditor Claims Against Trust Property*

■ The optional procedure described in section 19000 et seq., authorizes a trustee to file a proposed notice to the settlor's creditors, effectively requiring persons with claims against the deceased settlor to preserve their right to pursue trust assets by timely filing a claim against the trust (§§ 19003, 19004)[8] and, if the claim is rejected, timely filing an action on the claim (§§ 19253, subd. (d); 19255, subds. (a) & (c)). Failure to timely file a claim or action on a rejected claim bars a noticed creditor from pursuing trust assets. In this way, the trust claims procedure both permits potential creditors to be identified and limits the time period in which they can maintain an action on the claim against trust property. The procedure is entirely optional; and a trustee incurs no liability for deciding to forgo it and distribute trust assets. (§ 19003.)

■ If there is no proceeding to administer the decedent's estate and the trustee elects not to file a proposed notice to creditors pursuant to the optional trust claims procedure, then a beneficiary to whom property is distributed is personally liable for any unsatisfied judgment obtained by a creditor against the decedent settlor's estate (§ 19400)—just as that beneficiary would have

---

optional proceeding through which the trustee and the beneficiary can settle claims with finality." (See Sen. Com. on Judiciary, Analysis of Sen. Bill No. 727 (1991–1992 Reg. Sess.) as introduced May 14, 1991.)

[7] Section 18201 was effectively recodified in the current statutory scheme as section 19001, subdivision (a), providing: "Upon the death of a settlor, the property of the deceased settlor that was subject to the power of revocation at the time of the settlor's death is subject to the claims of creditors of the deceased settlor's estate and to the expenses of administration of the estate to the extent that the deceased settlor's estate is inadequate to satisfy those claims and expenses." Former section 18201 remains applicable to claims against a deceased settlor who died before January 1, 1992. (§ 19012, subd. (b).)

[8] Section 19003 provides in part: "(a) At any time following the death of the settlor, and during the time that there has been no filing of a petition to administer the estate of the deceased settlor in this state of which the trustee has actual knowledge, the trustee may file with the court a proposed notice to creditors. . . ."

Section 19004 provides: "If the trustee files, publishes, and serves notice as set forth in Section 19003, then: [¶] (a) All claims against the trust shall be filed in the manner and within the time provided in this part. [¶] (b) A claim that is not filed as provided in this part is barred from collection from trust assets. [¶] (c) The holder of a claim may not maintain an action on the claim against the trust unless the claim is first filed as provided in this part."

been under former section 18201. If the trustee properly utilizes the optional procedure, on the other hand, property distributed from the trust is no longer subject to creditors' claims.[9]

 c. *When a Probate Proceeding Has Been Initiated, the Trust Claims Procedure Is Not Permitted; a Creditor Wishing to Preserve Its Right to Assets in the Decedent's Estate or Trust Must File a Timely Claim in the Probate*

■ Where a trustee has actual knowledge that an administrator of the decedent's estate has instituted probate proceedings, the trustee is statutorily barred from initiating a trust claims procedure. (§ 19003, subd. (a).) In that case, the notice of probate proceedings constitutes sufficient notice to all claimants that they must file a timely claim in the probate proceedings or be barred from later asserting the claim against either the estate or the trust. (§§ 19006, subd. (b), 9351.)[10]

■ Once a claim is filed in the probate proceeding, the estate has the option of paying or rejecting the claim. If the claim is rejected, either affirmatively or by the estate's failure to act on it within 30 days after it is filed (§ 9256), the claim is considered "disputed" (§ 11460, subd. (b))[11]; and the claimant, to preserve its right to proceed against the decedent, must file a timely lawsuit against the estate. (§ 9353, subd. (a).)[12]

---

[9] Once a trustee elects the optional procedure and files a proposed notice to creditors with the superior court, the trustee may accept or reject any claim that is timely filed. If the claim is rejected and the time for filing an action by the creditor passes, the trustee may make distributions in accordance with the terms of the trust without liability to the trustee or beneficiaries receiving the distributions. (§ 19255, subd. (d).)

[10] Section 19006, subdivision (b), provides: "If the personal representative of the deceased settlor's estate has published notice under Section 8120 and given notice of administration of the estate of the deceased settlor under Chapter 2 (commencing with Section 9050) of Part 4 of Division 7, the protection from creditors afforded the personal representative of the deceased settlor's estate [from liability for lack of notice] shall be afforded to the trustee and to the beneficiaries of the trust."

Section 9351 provides: "An action may not be commenced against a decedent's personal representative on a cause of action against the decedent unless a claim is first filed as provided in this part and the claim is rejected in whole or in part."

[11] Section 11460, subdivision (b), provides: "A debt is 'disputed' if it is a claim rejected in whole or in part under Part 4 (commencing with Section 9000) and is not barred under Section 9353 [statute of limitations] as to the part rejected."

[12] Section 9353, subdivision (a), provides: "Regardless of whether the statute of limitations otherwise applicable to a claim will expire before or after the following times, a claim rejected in whole or in part is barred as to the part rejected unless . . . the creditor commences an action on the claim" within the prescribed time period.

d. *A Judgment Creditor of the Estate May Reach Property in the Decedent's Revocable Living Trust When Estate Assets Are Inadequate to Satisfy Judgment*

■ If the claimant prevails and obtains a judgment in its favor, the judgment is payable in the ordinary course of the administration of the estate. (§ 9300.)[13] If the estate is inadequate to satisfy the judgment, the judgment creditor may proceed against the assets in the settlor's revocable living trust. (§ 19001, subd. (a).) The judgment creditor "need only establish it has a money judgment against the decedent/settlor[;] [t]hereafter, the judgment is paid in the normal course of administration of the trust." (*Dobler, supra,* 89 Cal.App.4th at pp. 540–541; § 19300, subd. (a).)

3. *A Trustee Has No Duty to Preserve Assets for the Benefit of a Claimant with a Lawsuit Pending Against the Estate*

AMCIG contends, if assets in a revocable inter vivos trust are available to a decedent's judgment creditor to the extent the probate estate is insolvent (§ 19001, subd. (a)), then it necessarily follows a trustee must have a duty to preserve trust assets and withhold distribution to the trust beneficiaries until the lawsuit against the estate is resolved or, at a minimum, until it is objectively certain the estate will be able to satisfy the judgment should one be obtained in the claimant's favor.

■ There is simply no authority, either in statute or the common law, for imposing such a duty on a trustee. The statutes governing trustee duties make clear that a trustee "has a duty to administer the trust *solely* in the interest of the [trust's] beneficiaries." (§ 16002, subd. (a), italics added.) Nothing in the statutory scheme governing trusts, either expressly or implicitly, establishes a competing duty to withhold otherwise authorized distribution to beneficiaries to preserve trust assets in favor of a third party with a disputed claim. Certainly, once judgment is obtained, it is payable in the ordinary course of the administration of either the estate or the trust if the estate is inadequate. (§§ 9300, 19001, subd. (a), 19300, subd. (a).) The potential availability of trust assets to a judgment creditor in the course of the administration of the trust, however, creates no statutory duty obligating a trustee to prefer a claimant with an unresolved claim against the estate to the interests of the trust's beneficiaries.

---

[13] Section 9300, subdivision (a), provides: "Except as provided in Section 9303 [property subject to execution lien at time of settlor's death], after the death of the decedent all money judgments against the decedent or against the personal representative [of the estate] on a claim against the decedent or estate are payable in the course of administration and are not enforceable against property in the estate of the decedent under the Enforcement of Judgments Law (Title 9 (commencing with Section 680.010) of Part 2 of the Code of Civil Procedure)."

██ AMCIG nonetheless suggests, and our dissenting colleague agrees, that sections 19400[14] and 19255, subdivision (d),[15] create such a duty by implication. Section 19400, however, merely provides that the beneficiary of a revocable trust who receives trust property remains personally at risk to the deceased settlor's creditors if there is neither a probate proceeding nor a voluntary trust claims proceeding to notify creditors and determine the validity of their claims, just as those beneficiaries would have been liable under former section 18201. Contrary to our dissenting colleague's view, section 19400 does not represent "an *exception* to what otherwise would have been the general rule"—that the trustee as well as the beneficiary is liable for distributions made before disputed claims are resolved—but a continuation of the earlier rule that *only* the beneficiary is liable. The "general rule" in both statute and common law is that the trustee has no obligation to third party claimants to preserve trust assets. (See 2 Cal. Probate Prac. (Matthew Bender 1991) Administering the Estate, § 12A.02, p. 12A-8 (rel. 10-5/99) ["trustee may not be held personally liable to the creditors merely for making a distribution from the trust . . . . [I]f creditors of the deceased settlor are successful in prosecuting a claim against trust assets, a judgment may properly be rendered against the trustee *as trustee,* but there is no basis for rendering a judgment against the trustee personally"].)

AMCIG's and the dissent's reliance on section 19255, subdivision (d), is similarly misplaced. That section of the optional trust claims procedure specifies that neither the trustee nor a beneficiary is liable if trust property is distributed under the terms of the trust once a claim has been rejected and more than 120 days have passed without notice of pendency of an action on the rejected claim.[16] From this express protection *against* liability under specified circumstances, AMCIG and our dissenting colleague reason that the

---

[14] Section 19400 provides in part: "Subject to Section 366.2 of the Code of Civil Procedure, if there is no proceeding to administer the estate of the deceased settlor, and if the trustee does not file a proposed notice to creditors pursuant to Section 19003 and does not publish notice to creditors pursuant to Chapter 3 (commencing with Section 19040), then a beneficiary of the trust to whom payment, delivery, or transfer of the deceased settlor's property is made pursuant to the terms of the trust is personally liable, to the extent provided in Section 19402, for the unsecured claims of the creditors of the deceased settlor's estate."

[15] Section 19255, subdivision (d), provides: "Any property distributed by the trustee under the terms of the trust after 120 days from the later of the time the notice of rejection is given or the claim is due and before the notice of pendency of action or referral or arbitration is filed and given, excluding therefrom any time during which there is a vacancy in the office of the trustee is not subject to the claim. Neither the trustee nor the distributee is liable on account of the distribution."

[16] Section 19255, subdivision (a), requires the claimant to bring an action on a rejected claim 90 days after the notice of rejection is given if the claim is due at the time of rejection, or 90 days after the claim becomes due if it is not already due at the time of giving the notice of rejection. If an action on a rejected claim is not commenced within these time limits, "it is barred forever." (§ 19253, subd. (d).)

Legislature must have intended to *impose* liability on a trustee if he or she made a distribution of trust property while an unresolved claim or action on a claim was still pending. And the trustee's liability is personal, not merely in his or her representative capacity. From this premise, AMCIG and our dissenting colleague then insist that, if a trustee may be held personally liable for distributing assets once a claims procedure is initiated and an action against the decedent is filed, so too should the trustee be held liable for failing to preserve trust assets to satisfy a contingent or disputed creditor if a timely claim has been filed in the pending probate proceeding since the probate proceeding itself prevents the initiation of a trust claims procedure. (§ 19003, subd. (a).)

The negatives pregnant at the foundation of this argument simply will not support the elaborate structure AMCIG and our dissenting colleague seek to construct in order to permit a surcharge against the trustees in the present case. First, in section 19203, dealing with claims against the decedent by a public entity, the Legislature expressly provided that if a premature distribution of trust property occurred, "the public entity has a claim against the distributees to the full extent of the public entity's claim or each distributee's share of the distributed property . . . whichever is less." There is no mention of any potential liability against the trustee, personal or otherwise, for making the improper distribution. It seems unlikely the Legislature intended to extend greater protection to private creditors than to public entities with claims against the decedent.

Even assuming a creditor may impose personal liability against a trustee who voluntarily initiates the optional trust claims · procedures and then disregards the statutory scheme and distributes trust property before resolution of the disputed claim, however, there is no basis for extending that implied liability to a situation in which the trustee who has actual notice of an open probate proceeding has not, because he or she cannot, filed with the superior court a proposed notice to creditors. (See § 19003, subd. (a).) In that instance, the Legislature has expressly stated its intent that the probate proceedings for the estate of the deceased settlor, rather than an action against the trust, are to be the primary avenue of recovery for creditors.

■ The pendency of the probate proceeding does not alter the trustee's statutory duty to administer the trust solely for the benefit of trust beneficiaries. Whether the decision to forgo the trust claims procedure is made voluntarily by the trustee or mandated by the existence of the probate proceeding itself, the practical effect is the same: In the absence of a judicially supervised trust claims procedure limiting the trustee's ability to distribute assets to trust beneficiaries, the trustee's duty is to distribute assets in accordance with the terms of the trust. If a claim against the decedent's

estate happens later to be reduced to judgment, and the estate is insufficient to satisfy the claim, the creditor is statutorily entitled to reach assets in the debtor settlor's revocable living trust. (§ 19001, subd. (a).) To hold otherwise and find a duty to withhold distributions in favor of any person who happened to file a lawsuit against the estate would elevate the rights of a disputed claimant over that of the trust beneficiary in contravention of explicit statutory authority making the beneficiaries' interest in trust property paramount.[17]

AMCIG nonetheless argues that, as a matter of fairness, the trustee must be held personally liable for distributions made while a disputed claim is pending against the estate when, as in this case, the distributions rendered the trust unable to satisfy the judgment following the estate's insolvency. Otherwise, AMCIG asserts, once a claim is reduced to judgment and both the estate and the trust are inadequate to satisfy the claim, the creditor who properly preserved its right to estate assets by filing a timely claim in the probate proceeding would unfairly find itself without any means to satisfy its judgment because neither the trustee nor the beneficiary who received the trust property would be responsible for satisfying the judgment.

We disagree with AMCIG's interpretation of the applicable provisions of the Probate Code. Although section 19400 confirms preexisting law that the beneficiaries are personally liable to the creditors of the deceased settlor's estate if there is no formal probate proceeding and the trustee elects not to utilize the optional trust claims procedure, nothing in that section precludes creditors from accessing trust property in the hands of a beneficiary if, in fact, both the estate and the trust are inadequate to satisfy the judgment. Just as property over which a settlor retains the power to revoke remains the property of the settlor notwithstanding the revocable trust (see § 18200 [rights of settlor's creditors against revocable trust during life of settlor]), trust property legislatively authorized to be subject to a claim of the deceased settlor's creditors is no less subject to that claim simply because it was transferred from one beneficiary of the trust (the settlor) to another. Of course, assets distributed to successor beneficiaries are protected from creditors to the extent the estate primarily (or the trust, secondarily, if the estate is insolvent and sufficient undistributed property remains in the trust) is adequate to satisfy the judgment. (§ 19001, subd. (a).) If both the estate and the

---

[17] Section 11460 et seq. provides the probate court with several options for addressing a disputed claim when all debts have been paid and the estate is ready to close, including requiring an amount sufficient to satisfy the disputed claim be placed in escrow in the event the claim is later resolved against the estate, or ordering the estate to remain open until the disputed claim is resolved. Those sections, appropriate for probate estate proceedings that require court approval before assets may be distributed, do not govern trust administration, where court approval for distributions is unnecessary.

trust are insufficient to satisfy the judgment, however, the trust assets distributed to the beneficiaries remain available to satisfy the judgment to the same extent they would have been prior to distribution. (Cf. § 19103, subd. (d) [general rule of beneficiary liability inapplicable to distributions properly made pursuant to terms of the trust before late-filed claim allowed by court].)

### 4. No Case Authority Supports AMCIG's Effort to Surcharge a Trustee for Distributing Assets in Accordance with the Terms of a Trust While a Lawsuit Is Pending Against the Estate

Notwithstanding the complete absence of any statutory authority authorizing the personal liability of a trustee for distributing assets in accordance with the terms of a trust while a lawsuit is pending against the estate, AMCIG insists the trustee's duty to withhold distributions for the benefit of potential judgment creditors is confirmed in our opinion in *Dobler, supra,* 89 Cal.App.4th 530. In *Dobler* we held a judgment creditor who had filed a timely claim against the estate in the probate proceedings, but did not (because it could not) file a separate claim against the trust, is not time barred from pursuing trust assets to satisfy its judgment pursuant to section 19001 to the extent the estate is insolvent. In response to the trustees' argument that permitting a judgment creditor to pursue trust assets without first filing a timely claim against the trust would lead to unfair surprise, we observed: "A reasonably competent trustee would . . . take steps to discover whether probate proceedings had opened, and if so, the nature and extent of all claims made within the statutory period against the estate. Then, secure in the knowledge no claims other than claims timely filed in the probate proceedings could ever be asserted against trust assets, a reasonably competent trustee would make provisions or arrangements to provide for disputed, or other unresolved debts." (*Dobler*, at p. 542.)[18]

AMCIG relies on the foregoing language to urge that *Dobler* recognizes a duty of reasonable care in preserving assets for the benefit of a claimant with a lawsuit pending against the estate. AMCIG is mistaken. At most, the *Dobler* opinion acknowledges that a competent trustee of a decedent's revocable living trust should not be unfairly surprised if a judgment creditor, once having prevailed in the probate proceeding, were to seek to have its judgment satisfied by trust assets to the extent the estate is insolvent. Nothing in our opinion was intended to suggest a duty exists on the part of the trustee to withhold any otherwise authorized distribution of property to ensure the availability of trust assets for the ultimate benefit of a

---

[18] We also noted the trustees' argument of unfair surprise was meritless in any event in this case, where the trustees also served as the estate administrators. (*Dobler, supra,* 89 Cal.App.4th at p. 543.)

third party with only a disputed claim. To the contrary, as *Dobler* makes clear, section 19001, subdivision (a), imposes a duty on a trustee to pay a *judgment creditor* in the normal course of the administration of the trust. (*Dobler, supra,* 89 Cal.App.4th at pp. 540–541.) No other duty is supported by statute.

*In re Marriage of Perry* (1997) 58 Cal.App.4th 1104 [68 Cal.Rptr.2d 445] and *Bank One Texas v. Pollack, supra,* 24 Cal.App.4th 973, although cited by AMCIG in support of its position, reinforce our conclusion. Both cases stand for the proposition that a *judgment creditor* is statutorily entitled to pursue assets in the revocable living trust of the decedent when the estate is insolvent. (*In re Marriage of Perry,* at p. 1110 [property in a living trust available to satisfy an existing and valid child support order]; *Bank One Texas,* at p. 980 [judgment creditor].) Neither case remotely suggests a trustee has a duty to preserve trust assets just in case a disputed creditor later obtains a judgment and the estate is insolvent.

### 5. A Trustee May Be Personally Liable to a Creditor Under Circumstances Where the Distribution Constitutes a Fraudulent Conveyance or Other Common Law Tort Against the Creditor

AMCIG insists a holding affirming the trial court in this case would permit a trustee to purposefully hinder a creditor's attempt to satisfy its judgment. There is no suggestion the distributions made by the trustees in this case, all of which were completed before the judgment in the estate proceeding was final, were in any way motivated by a desire to put trust assets beyond the reach of AMCIG if it ultimately prevailed in the estate litigation. In any event, nothing in our decision today precludes a creditor from seeking to hold a trustee personally liable for improperly distributing assets to a trust beneficiary knowing, for example, that an order in favor of the creditor has been entered and judgment is imminent, and the assets will be expended or otherwise unavailable to the creditor once distributed. Such a distribution may violate the common law or statutory provisions prohibiting fraudulent conveyances (Civ. Code, § 3439.04)[19] or could conceivably constitute a tort similar to interference with prospective economic advantage. (See, e.g., *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153–1154 [131 Cal.Rptr.2d 29, 63 P.3d 937] [tort of interference with prospective economic advantage requires (1) a relationship between the plaintiff and some third party with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) a wrongful act,

---

[19] Civil Code section 3439.04 provides: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [¶] (a) [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."

apart from the interference itself, by the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant].)[20]

 Absent affirmative wrongdoing amounting to a violation of some other legally cognizable duty, however, there is no legal authority for subjecting the trustee to personal liability for distributing assets to the trust beneficiaries to the potential detriment of a disputed claimant who later obtains a judgment against the decedent's estate. (See *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 58 [77 Cal.Rptr.2d 709, 960 P.2d 513] ["Recognition of a duty to manage business affairs so as to prevent purely economic loss to third parties in their financial transactions is the exception, not the rule, in negligence law . . . [¶] . . . we decline to recognize a duty to avoid business decisions that may affect the financial interests of third parties . . . ."].) Here, the trial court found no affirmative wrongdoing separate and apart from the trustees' distribution, which it found to have been in good faith. AMCIG does not challenge this finding on appeal. Accordingly, AMCIG's petition to subject the trustees to personal liability was properly denied.

## DISPOSITION

The order denying the petition to surcharge the trustees is affirmed. Respondents are to recover their costs on appeal.

Zelon, J., concurred.

**JOHNSON, J.**—I respectfully dissent.

This is not an easy case. The majority opinion sets forth a tenable construction of what undeniably is a complicated interplay of code provisions. But it is not the only tenable interpretation. By a rather slim margin, I find another reconciliation of the statutory language to be more persuasive.

I begin with a brief overview of that position. Probate Code section 19001, subdivision (a) (section 19001 (a)) makes a trust and its property "subject to" *any* creditor's claim against a deceased settlor's estate, including a disputed claim, unless and until the property in the estate itself proves sufficient to discharge

---

[20] Like AMCIG, the dissent suggests that in this case the trustees, who were also the executors of the settlor's estate, acted "imprudently" and "dissipated" trust assets by making distributions knowing they would make it impossible for the trust to satisfy the judgment AMCIG might ultimately obtain. The duty to preserve trust assets advocated by the dissent by way of negative pregnant, however, would seem to apply to any distribution by a trustee, whether in good faith or not, provided only that it did not fall within one of the express statutory safe harbors contained in the Probate Code.

that claim. Furthermore, the combination of that section and sections 19255 and 19400 imposes liability on trustees who dissipate trust assets needed to pay a disputed but properly filed claim by making premature distributions to beneficiaries while that claim is pending. In *Dobler I*,[1] this court found appellants had timely filed their claim in the probate action and, furthermore, held this constituted a timely filing with the trustees as well.[2] During the period appellants' claim was in litigation the trustees (who also were the executors of the settlor's estate) assumed the risk of distributing over $500,000 to the beneficiaries, despite knowing these distributions would make it impossible for the trust to satisfy appellants' judgment should they prevail. In these circumstances, it is my view appellants have a right to surcharge the trustees as an alternative or supplement to their right to recover from the distributees, the latter being a right which my colleagues appear to endorse.

1. *A trustee can be liable for distributing trust assets that may be required to satisfy a timely filed but disputed claim against the settlor's estate.*

There is no dispute under section 19001(a) that trust property "is subject to the claims of creditors of the deceased settlor's estate . . . to the extent that the deceased settlor's estate is inadequate to satisfy those claims."[3] In my view, it is noteworthy this section uses the term "claims" and not "judgments." Nor does it limit the exposure to "undisputed claims" or "claims the trustees or settlor's executors have accepted" but makes the trust property subject to all claims, including those the settlor's estate has rejected and the claimants have chosen to litigate.

It is also undisputed the trust property here was inadequate to satisfy appellants' claims against the settlor largely because the trustees had distributed over $500,000 to the trust's beneficiaries while appellants were litigating their claims against those same trustees (in their capacity as executors of the settlor's estate). The question is whether trustees are free to dissipate trust assets by making distributions they know will render those assets insufficient to satisfy creditor's claims to which the trust property is "subject" under 19001(a).

---

[1] *Dobler v. Arluk Medical Center Industrial Group, Inc.* (2001) 89 Cal.App.4th 530 [107 Cal.Rptr.2d 478] (*Dobler I*).

[2] *Dobler I, supra,* 89 Cal.App.4th at pages 540–544.

[3] This subdivision reads in full: "Upon the death of a settlor, the property of the deceased settlor that was subject to the power of revocation at the time of the settlor's death is subject to the claims of creditors of the deceased settlor's estate and to the expenses of administration of the estate to the extent that the deceased settlor's estate is inadequate to satisfy those claims and expenses." (§ 19001, subd. (a); further section references are to the Probate Code.)

The majority opinion appears to answer that question in the negative as to creditor claims that have been reduced to judgment, but grants trustees the power to make asset-depleting distributions while disputed claims are in litigation and before they mature into a judgment. (Maj. opn. *ante*, at p. 1339.) It is true the limited existing authority, principally *In re Marriage of Perry*,[4] arose from a claim based on a judgment—the child support obligation flowing from a family court order. In that opinion the court held: "In the context of an existing child support order [section 19001 (a)] is a clear statement of legislative intent that property put into a living trust . . . must be *available* to satisfy a valid child support obligation, no matter what the trust's terms of distribution."[5]

But this does not mean the *Perry* court held trust property is only available for court judgments or that trustees are free to dissipate trust assets before a disputed claim can be reduced to judgment. Those issues were not before the *Perry* court and thus it had no occasion to address them. As is often the case, a court decision stating a right exists if X is true does not mean the same right does not exist if Y is true. That is, the fact the *Perry* court held an *existing judgment* ordering a settlor pay child support was superior to the trustee's obligation to distribute trust property to the trust's beneficiaries in no sense suggests the trustees can ignore a disputed claim and freely distribute trust property to those beneficiaries, just because that claim is not yet reduced to judgment. Admittedly, the *Perry* decision does not stand for the proposition the existence of a disputed claim bars trustees from distributing trust property that may be needed to satisfy claims against the settlor's estate. But it does not support the opposite proposition either.

So what is the status of disputed claims while they are in litigation? Are trustees free to make distributions to beneficiaries if they know this will mean the remaining trust property will be insufficient to satisfy a valid judgment against the deceased settlor's estate should such a judgment emerge from the litigation? In my view, the answer reposes in sections 19400 and 19255, in particular, and in the overall statutory framework that flows from 19001(a), in general.

Section 19400 deals with the situation where two conditions are satisfied. First, there is *no* probate proceeding and second, the trustee has chosen *not* to file a notice to the settlor's creditors. When both those conditions exist, the section relieves trustees of any responsibility for creditors' claims when they make distributions to beneficiaries. Section 19400 instead places the entire liability on the beneficiaries themselves "for the unsecured claims of the

---

[4] *In re Marriage of Perry* (1997) 58 Cal.App.4th 1104 [68 Cal.Rptr.2d 445].

[5] *In re Marriage of Perry, supra*, 58 Cal.App.4th at page 1109.

creditors of the deceased settlor's estate."[6] The reason is simple. Only beneficiaries and not trustees can be held liable for creditor claims when there is no probate proceeding *and* no notices to the trust's creditors because trustees cannot be expected to make provisions for claims of which they are unaware. Thus, they are free to distribute all the trusts' assets to the beneficiaries with the understanding the latter and only the latter will be liable for any creditor claims that may emerge.

Here, of course, neither of these conditions is satisfied. There *was* a probate proceeding. And the notices the estate sent out to the settlor's creditors and the claims those creditors filed with the executors/trustees qualified as notice and claims for purposes of the trust as well. So what should trustees do if they have notice of creditor claims—as they do here? May they still distribute assets that may be needed to cover all claims, including disputed claims, and place all the liability for satisfying those claims on the beneficiaries who received those distributions? If they could, section 19400 would be superfluous.

The Legislature found it necessary to insert section 19400 in the trust provisions of the Probate Code because it represented an *exception* to what otherwise would be the rule—trustees as well as beneficiaries are liable for distributions made while creditor claims are pending against the trust (or estate). In the absence of section 19400 trustees would be liable for distributions they made to beneficiaries even where they had no knowledge of or reason to know about pending claims when they distributed trust assets to the beneficiaries. The function of section 19400 is to exempt trustees from such liability when they lack knowledge (or reason to possess such knowledge) of pending creditor claims.

But if *either* a probate proceeding has been filed *or* the trustees filed a notice to creditors, the section 19400 exception simply does not apply and the general rule prevails. Here, of course, a probate proceeding had been filed. When a trustee has reason to know claims exist against the trust—including and especially claims against the deceased settlor's estate if the latter is in

---

[6] Section 19400 reads as follows: "Subject to section 366.2 of the Code of Civil Procedure, *if* there is no proceeding to administer the estate of the deceased settlor, *and if* the trustee does not file a proposed notice to creditors pursuant to Section 19003 and does not publish notice to creditors pursuant to Chapter 3 (commencing with Section 19040), *then* a beneficiary of the trust to whom payment, delivery, or transfer of the deceased settlor's property is made pursuant to the terms of the trust is personally liable, to the extent provided in Section 19402, for the unsecured claims of the creditors of the deceased settlor's estate." (§ 19400; italics added to highlight internal if-then logic of the section.)

(Section 19402 limits each beneficiary's liability to his or her proportionate share of the total distributions to beneficiaries. It also caps the maximum the beneficiary will have to pay at the amount distributed to him or her.)

probate—the rationale for section 19400 disappears, along with the trustee's eligibility for its protections. Thus the section 19400 exception to trustee liability evaporates and the underlying general rule applies.

Section 19255 further reinforces this interpretation. It leaves the inescapable implication trustees as well as beneficiaries are liable if they distribute assets that may be required to satisfy creditor claims, even those in litigation, once those claims are timely filed.[7] This section deals with claims the trustee rejects in whole or in part and defines the process the claimants must follow in disputing the rejection. It gives the creditor 90 days to file a lawsuit[8] and requires notice of the lawsuit be given to the trustees. But the key provision for present purposes is section 19255, subdivision (d) which creates a limited safe harbor for both trustees and beneficiaries.

"Any property distributed by the trustee under the terms of the trust after 120 days from the later of the time the notice of rejection is given or the claim is due *and before the notice of pendency of action or referral or*

---

[7] "(a) § 19255. [Rejected claims; actions on claim for referral to referee or arbitration; commencement of action; notice; property distributed; court costs and litigation expenses.]

"(a) A rejected claim is barred as to the part rejected unless the claimant brings an action on the claim or the matter is referred to a referee or to arbitration within the following times, excluding any time during which there is a vacancy in the office of the trustee:

"(1) If the claim is due at the time of giving the notice of rejection, 90 days after the notice is given.

"(2) If the claim is not due at the time of giving the notice of rejection, 90 days after the claim becomes due.

"(b) In addition to any other county in which an action on a rejected claim may be commenced, the action may be commenced in the county or city and county wherein the principal place of administration of the trust is located.

"(c) The claimant shall file a notice of the pendency of the action or the referral to a referee or to arbitration with the court clerk in the trust proceeding, together with proof of giving a copy of the notice to the trustee as provided in Section 1215. Personal service of a copy of the summons and complaint on the trustee is equivalent to the filing and giving of the notice.

"(d) Any property distributed by the trustee under the terms of the trust after 120 days from the later of the time the notice of rejection is given or the claim is due and before the notice of pendency of action or referral or arbitration is filed and given, excluding therefrom any time during which there is a vacancy in the office of the trustee, is not subject to the claim. Neither the trustee nor the distributee is liable on account of the distribution.

"(e) The prevailing party in the action shall be awarded court costs and, if the court determines that the prosecution or defense of the action against the prevailing party was unreasonable, the prevailing party shall be awarded reasonable litigation expenses, including attorney's fees. For the purpose of this subdivision, the prevailing party shall be the trustee if the creditor recovers an amount equal to or less than the amount of the claim allowed by the trustee, and shall be the creditor if the creditor recovers an amount greater than the amount of the claim allowed by the trustee." (§ 19255.)

[8] In the alternative, the creditor can submit the dispute to a referee or to arbitration. (§ 19255, subd. (a).)

*arbitration is filed and given,* excluding therefrom any time during which there is a vacancy in the office of the trustee, is *not subject to the claim. Neither the trustee nor the distributee is liable on account of the distribution.*"[9]

This safe harbor lasts only until the trustee receives notice of the creditor's lawsuit, however. (Section 19255, subdivision (d) refers to the filing and giving of a "notice of pendency of action," but actual notice is sufficient.)[10] Until that time both the trustee and the beneficiary are absolved of liability to the creditor for any distribution the trustee makes to the beneficiary. Yet once the trustee has notice of the lawsuit on the disputed claim, that immunity ceases—for both the trustee who ordered the distribution and the beneficiary who received it.

The clear implication? Once the creditor files a lawsuit and provides notice of same to the trustee no distributions should be made which impair the ability of the trust property to satisfy the creditor's disputed claim should he win the lawsuit. If only beneficiaries and not trustees were liable for distributions made after notice of the lawsuit, why would it be necessary for section 19255, subdivision (d) to create a safe harbor for trustees as well? The obvious answer—because trustees as well as beneficiaries are liable to creditors for distributions that deplete trust assets below the level needed to satisfy disputed, as well as undisputed, creditor claims.

Once again, as with section 19400, the Legislature found it necessary to create an *exception* to this underlying general rule. Starting from the last day a given creditor has the right to file a lawsuit to enforce his or her disputed claim for it to be timely and ending with the day the trustee receives notice that lawsuit has been filed, the trustee can reasonably assume the creditor is not disputing the rejection of the claim. Accordingly, for that window of time, whether narrow or wide, the trust property is "not subject to the claim."

And the consequence of *not* being "subject to the claim"? The trustee is free to distribute trust property to the beneficiaries and "[n]either *the trustee nor the distributee is liable on account of the distribution.*"[11] Conversely, once the trustee has notice of a disputed claim, it follows the trust property is "subject to the claim." And, as section 19255, subdivision (d) makes clear, being "*subject* to the claim" means being "liable on account of the distribution," and, furthermore, that liability extends to the trustee as well as the distributees.

---

[9] Section 19255, subdivision (d), italics added.

[10] See, e.g., *Estate of Wilcox* (1945) 68 Cal.App.2d 780 [158 P.2d 32] (filing of notice of pendency of the action is unnecessary where the executor has actual notice).

[11] Section 19255, subdivision (d) (section 19255 (d)).

This likewise helps resolve any lingering ambiguity about the meaning—or at least the consequences flowing from—that same clause, "*subject* to the claims," in section 19001(a). As in section 19255(d), it means "the trustee [or] the distributee is liable on account of distribution[s]" the trustee makes "to the extent that the deceased settlor's estate is inadequate to satisfy those claims [e.g., the claims filed with the estate]."

This meaning of the term "subject to the claims" is reinforced by the overall statutory framework. Unless and until probate is opened for a trust settlor's estate, under section 19400 the trustee retains the option of either distributing the trust property and shifting the entire liability for creditor claims to the distributees *or* of notifying the creditors and taking on some personal responsibility and liability for the proper discharge of those claims out of trust property. But once a deceased settlor's probate proceeding is opened, the trust property becomes "subject to the claims" filed against the settlor's estate. The trustee's option under section 19400 to distribute trust property and shift the corresponding liability for creditor claims to the trust's beneficiaries disappears.

Nothing in section 19001(a) suggests the trust property only becomes "*subject* to the claims" against the settlor's estate at the time probate closes or when it is known with absolute certainty the estate's resources will be inadequate to pay the claims against the estate. Rather, the trust property becomes *subject* to those claims *at the time probate opens*. In essence, the trust property becomes part of the deceased settlor's estate not to be released unless and until it is clear that property will not be required to pay any claims, disputed or undisputed, against the estate. Otherwise, in many if not most situations, section 19001(a) would be rendered ineffectual in accomplishing its avowed purpose of preserving trust resources for the benefit of creditors "to the extent that the deceased settlor's estate is inadequate to satisfy those claims." Only in rather unusual circumstances, such as where the trust took longer to make its distributions to beneficiaries than the estate took to wind up its affairs, would the trust property theoretically *subject* to the creditors' claims still be available to pay those claims.

Nor is the legislative purpose of preserving trust assets needed to discharge claims against the estate satisfied by interpreting section 19001(a) to allow the distribution of trustproperty to beneficiaries with the understanding they may have to return that property to creditors if the estate's property ultimately proves inadequate to pay all those claims. The plain language of section 19400 forecloses this interpretation, confining the option to situations where no probate has yet been filed.

But even if section 19400 did not exist, the legislative policy behind section 19001(a) appears incompatible with a construction allowing trustees to

distribute trust property to beneficiaries with liability for those distributions limited to those distributees. Once probate is filed the estate's creditors are entitled to appropriate management of the trust property potentially required to satisfy their claims so they need not rely on their ability to recover from what may turn out to be unreliable or numerous or geographically remote beneficiaries. To relegate creditors to the risk of having to pursue a host of lawsuits against uncooperative beneficiaries some of whom may have spent or lost all or most of the distributed property and thus be unable to satisfy the creditors' claims, and some of whom may now reside in other states or even foreign countries, is simply not consistent with the goal of making trust property available to creditors of the deceased settlor's estate.

For these several reasons, it is my view section 19001(a) and the rest of the statutory scheme the Legislature constructed makes trustees liable when they assume the risk of distributing trust property to beneficiaries if that property is "subject to" the claims of the settlor's creditors and should the estate's resources prove inadequate to pay those claims. Furthermore, for reasons discussed above, this applies to disputed claims in litigation of which trustees have timely notice just as it does to those already reduced to judgment. We now turn to the question whether appellant's claim satisfied these criteria.

> 2. *These creditors are entitled to surcharge the trustees for acting imprudently in making distributions that impaired the trust's ability to satisfy the creditors' disputed claims.*

In the case before this court the trustees had full notice of the pendency of the action long before they distributed the half million dollars to the trust's beneficiaries. In part, this is because of their dual role as both executors and trustees. As pointed out in *Dobler I*, the two trustee-administrators "necessarily had *actual knowledge* not only of both estates, but also of every claim which could potentially have been asserted against Dr. Hylwa's assets, by virtue of their knowledge of all claims accepted, approved or rejected in the probate . . . claims against Dr. Hylwa, which if the probate estate was inadequate, could be asserted against assets the doctor placed in his revocable trust."[12]

This is a case where the right hand clearly knew what the left hand was doing. Appellants filed their lawsuit against the trustees in their capacity as executors and provided notice to them in that role. From that moment forward those trustee-executors as well as the beneficiaries who received the distributions were liable for any distributions impairing the trust's ability to satisfy appellants' disputed claims should they prove successful.

---

[12] *Dobler I, supra*, 89 Cal.App.4th at page 543 (italics added).

Particularly from their vantage point as both executors and trustees, respondents had *actual knowledge* the trust would be unable to satisfy appellants' $800,000 claim if they distributed a half-million dollars to beneficiaries while this claim was in litigation. As administrators of the settlor's estate they *knew* the estate's resources would fall far short of satisfying that claim, thus requiring the trust assets to discharge most of that debt. Indeed at one stage as executors they had to ask themselves as trustees to borrow $160,000 from the trust—and were only able to repay $33,000 of that loan from the estate's sparse resources. Similarly, as trustees prudently managing the trust and aware of all its assets, its liabilities and outstanding claims, respondents *knew* they could not afford to both make the distributions they did to the beneficiaries and also satisfy appellants' disputed creditors' claim. Yet they went ahead and distributed that half-million dollars to the beneficiaries.

It is not enough to say the trustees owed a fiduciary duty only to the trust's beneficiaries and thus were justified in choosing to distribute hundreds of thousands of dollars to them rather than preserving the trust's assets until the court decided appellants' disputed claim. Whether termed duties or liabilities or legal obligations, pursuant to statutory provisions and common law principles trustees also are responsible to others, including and especially the deceased settlor's creditors. Often, as here, these legal duties require trustees to take steps that may appear to place the interests of others over those of the trust's beneficiaries.

In *Dobler I,* a unanimous opinion this court filed three years ago at an earlier stage of the proceedings between these parties, we explained what a reasonably competent trustee would do upon learning of a settlor's death and the opening of probate. A "reasonably competent trustee would . . . take steps to discover . . . the nature and extent of all claims made within the statutory period against the estate. Then, secure in the knowledge no claims other than claims timely filed in the probate proceedings could ever be asserted against trust assets, *a reasonably competent trustee would make provisions or arrangements to provide for disputed, or other unresolved debts.*"[13]

In any event, in this case it was clearly imprudent for the trustees to make distributions to the beneficiaries while a disputed claim of this size remained outstanding. Obviously it was bad for appellant creditors, because the trust assets were so depleted they could only satisfy a small percentage of this claim. Appellant creditors also are forced to accept the risk the distributed trust property will be spent or otherwise dissipated by the beneficiaries—as well as incurring the cost of collecting from those beneficiaries.

---

[13] *Dobler I, supra,* 89 Cal.App.4th at page 542 (italics added).

But less obviously the decision to make these distributions also was bad for the beneficiaries. If appellants pursue the beneficiaries to recover the assets they are owed, those beneficiaries may not only lose all they received but also incur their own litigation costs and maybe even have to pay appellants' costs of litigation. In that instance they would have been better off if the trustee had not presented them with the pyrrhic victory of an unwise and premature distribution.

The trial court ruled the trustees could not be held to the usual "prudent person" standard[14] because the trust instrument set forth a lower standard—only requiring they avoid "bad faith, willful misconduct or gross negligence." This may well be a valid finding as far as the trustees' fiduciary duties to their beneficiaries. But the lower standard cannot apply to the trustees' legal obligations to creditors and other third parties. By its own terms, the code section permitting a settlor to lower the standard for the trustees he selects applies only to beneficiaries and breaches of the trust owed to them. It provides a "settlor may expand or restrict the [prudent person standard] . . . by express provisions in the trust instrument. A trustee is *not liable to a beneficiary* for the trustee's good faith reliance on these express provisions."[15] Nothing in the Probate Code, however, suggests a settlor can insert express provisions in a trust instrument diminishing the trustee's obligations to creditors or to shield the trust property or the trustees from creditors' legitimate claims, disputed or undisputed.

I began this dissent with a concession this was a close case—unnecessarily so, in my view. Thus, I urge the California Legislature to review these opinions and consider a clarifying amendment. The lawmakers may not have to do anything if they indeed intend section 19001(a) to allow trustees to avoid responsibility for the risk of making distributions while disputed claims against a settlor's estate are in litigation—and even when the assets in the settlor's estate may be insufficient to pay such claims should they prove successful. Even if that is the Legislature's intent, however, it might be preferable for them to consider amending the code to say so.

On the other hand, if the Legislature instead intends to give the estate's creditors a full measure of protection, along the lines described in this dissent, it appears amendatory language will be necessary. Otherwise, under

---

[14] "The trustee shall administer the trust with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims to accomplish the purposes of the trust as determined from the trust instrument." (§ 16040, subd. (a).)

[15] Section 16040, subdivision (c) (italics added). Similarly, section 16461, subdivision (a) provides, "the trustee can be relieved of liability for breach of trust by provisions in the trust instrument."

the terms of the majority opinion, creditors whose claims are disputed will be relegated to the problematical alternative of pursuing beneficiaries rather than trustees (and their bonding companies) for what they are owed.

Despite having requested legislative clarification, under the current state of the law and for reasons explained above, I would still reverse and remand for further proceedings. In my view, those proceedings should be conducted consistent with the legal principle trustees can be held liable for premature distributions which dissipate trust assets likely needed to pay disputed claims against a deceased settlor's estate should those claims prove successful.[16] This is especially so when, as here, the trustees had actual knowledge the estate's resources would fall far short yet distributed trust assets while a large claim against that estate was still in litigation.

A petition for a rehearing was denied April 13, 2004, and appellant's petition for review by the Supreme Court was denied June 9, 2004. Kennard, J., was of the opinion that the petition should be granted.

---

[16] Using their combined status as executors of the estate and trustees of the trust property it is conceivable respondents could have taken advantage of section 11463 to provide security in some form for appellants' disputed claim. If so, they could have gone ahead with these distributions to the trust's beneficiaries without violating their legal obligations to creditors under section 19001(a).

As noted in our *Dobler I* decision, section 11463 sets forth a number of options for dealing with disputed and contingent claims calculated to allow the completion of probate while those claims remain outstanding. (*Dobler I, supra*, 89 Cal.App.4th at pp. 536–537.) For instance, the estate's executor might post a bond or deposit sufficient funds to cover the disputed claim. If appellants lost their lawsuit, the bond would be discharged or the deposit restored to the estate. Given the size of appellants' claim and the financial status of the estate and the trust, however, these and like options probably were not viable.

But if one of the section 11463 options were feasible and respondents pursued it they would have been in a position to make these distributions to the beneficiaries without impairing the trust's ability to satisfy appellants' disputed claim. Consequently, the trustees would not be liable to appellants when the litigation validated the claim and found the trust itself bereft of the assets needed to satisfy the debt. Appellants would have been made whole by the proceeds of the bond or out of the reserved funds on deposit.