Filed 6/10/15  Estate of DeMotto CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| Estate of BENJAMIN DEMOTTO, Deceased. | B256695 |
| PEGGY MITCHELL, | (Los Angeles County Super. Ct. No. BP150148) |
| Petitioner and Respondent, | |
| v. | |
| MICHELE DEMOTTO et al., | |
| Objectors and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. David S. Cunningham III, Judge.  Affirmed.

Skousen Law and Bob Skousen for Objectors and Appellants.

Law Office of Cary W. Goldstein, Cary W. Goldstein and Sarah C. Clark, for Petitioner and Respondent.

_____

Appellants Michele DeMotto and Christopher DeMotto are the adult daughter and son, respectively, of Benjamin DeMotto, who died on August 31, 2013.[1]  They appeal from an order appointing respondent Peggy Mitchell, with whom DeMotto had been in a long-term romantic relationship, the administrator of DeMotto's estate.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 30, 2013, four months after DeMotto's death, Mitchell brought a *Marvin* action against DeMotto seeking damages and a constructive trust of assets held by appellants.[2]  (Case No. BC531935.)  The complaint alleged that DeMotto (who was estranged from his wife) and Mitchell (who was unmarried) met at the California Yacht Club in 2001 and began a romantic relationship that lasted until his death in 2013.  During that time, DeMotto suffered two strokes.  In 2006, DeMotto allegedly told Mitchell he had changed his mind about planning to marry her, but assured her she would be provided for in the event of his death.  It was an assurance DeMotto repeated multiple times over the ensuing years.  But after DeMotto died, Mitchell learned from DeMotto's daughter that DeMotto had not provided for Mitchell in either his will or trust.

Mitchell commenced the probate proceedings underlying this appeal on March 11, 2014, by filing a Petition for Letters of Administration of DeMotto's estate.  Attachment 3d to the petition states:  "This Petition is filed only for the purpose of filing a Creditor's Claim and expected litigation.  There are no known assets in the probate."

Appellants did not file their own counter petition for issuance of letters, but in their contest to Mitchell's petition, appellants characterized Mitchell's *Marvin* action as "nothing more than an attempt of a gold-digger to unjustly enrich herself to the detriment

---

[1]    To avoid confusion, we refer to decedent Benjamin DeMotto as DeMotto. We refer to his children, Michele and Christopher, collectively as appellants.

[2]    In *Marvin v. Marvin* (1976) 18 Cal.3d 660, 670–671 (*Marvin*), the California Supreme Court held that express or implied contracts between persons living together in a nonmarital relationship should be enforced, unless the contracts were explicitly founded on the consideration of meretricious sexual services.

of a no-asset estate." Appellants argued Mitchell should not be appointed administrator for three reasons: (1) The probate court lacked jurisdiction because the estate had no assets; (2) The public administrator, rather than Mitchell, should be appointed because Mitchell was a creditor and the public administrator has statutory priority over creditors in appointment (Prob. Code, § 8461, subds. (p) & (q));[3] and (3) As a result of the *Marvin* action, Mitchell has a conflict of interest with the estate and beneficiaries which renders her incapable of executing the duties of an administrator (§ 8502).

In her reply, Mitchell explained that a condition precedent to maintaining her *Marvin* action was a timely-filed claim against the estate, which required initiating probate proceedings;[4] a lack of tangible assets does not preclude probate; as a creditor, she is statutorily eligible to be appointed administrator of the estate; any person with a higher ranking under section 8461 could file a competing petition for probate.

Mitchell and appellants were represented by counsel at the April 11, 2014 hearing on the petition. After the probate court stated it was inclined to grant the petition, it asked if there was anything further. Appellants' counsel offered no response. An order to show cause re final account was set for November 13, 2014.

The order appointing respondent administrator of decedent's estate was filed on May 14, 2014. Letters of Administration were filed that same day. Appellants timely appealed.

---

**3**      All future undesignated statutory references are to the Probate Code.

**4**      A breach of contract action against the decedent falls within the definition of a "claim" against the estate. (§ 9000, subd. (a)(1).) Such action must be brought within one year of the date of death. (Code Civ. Proc., § 366.2, subd. (a); see also § 366.3 [promise of distribution from estate].) But it may not be brought unless a claim is first made to the personal representative of the estate and the claim is rejected in whole or in part. (§ 9351; see also *Dobler v. Arluk Medical Center* (2001) 89 Cal.App.4th 530, 536 [a claim against the estate is a condition precedent to filing an action against the estate].) The ability of a creditor to initiate administration of the estate compensates for the short limitations period. (See *Dawes v. Rich* (1997) 60 Cal.App.4th 24, 36, fn. 6.)

3

**DISCUSSION**

A.    *The Probate Court Had Jurisdiction Even for a "No Asset" Estate*

Appellants contend the probate court lacks jurisdiction because the petition states there are no assets in the estate.  Appellants are incorrect.

A decedent's property is subject to administration under the Probate Code and is subject to the rights of beneficiaries and creditors, among others.  (§ 7001.)  Because probate proceedings are concerned with administration of an estate, the existence of property to be administered is jurisdictional.  (14 Witkin, Summary of Cal. Law (10th ed. 2005) Wills & Probate, § 352.)  Although perhaps colloquially misunderstood, a debt is property for this purpose.  (*Ibid* ["The property may consist of an *intangible* such as a debt, or a cause of action for wrongful death of the decedent, where an administrator must be appointed to sue."], citing *Estate of Waits* (1944) 23 Cal.2d 676, 680-681.)  Our Supreme Court first stated over 100 years ago that a claim against the estate is treated as property of the estate.  (*Estate of Daughaday* (1914) 168 Cal. 63, 70 (*Daughaday).*)  The court in *Daughaday* posited three types of proceedings that theoretically could be utilized where the "the sole property of the estate is an equitable claim or demand," against the estate.  First, the probate court could treat "such a claim as property, justifying the issuance of letters in advance of its establishment."[5]  Or, the probate court could await the action of a court of equity in establishing the claim.  Or, the probate court, "sitting as a court of equity, [could] itself try the controversy" and grant or deny letters of administration depending on the determination of the validity of the claim.  (*Daughaday*, at pp. 69-70.)  It explicitly held that the first of these alternatives was the correct procedure, expressly rejecting  the two other alternatives.  "These considerations compel the conclusion that, in proper cases and upon a proper showing that the property of the

---

[5]    By "its establishment" we understand the court to be saying "the establishment or proof of the claim."  In other words, the granting of letters where the only property of the estate was a debt would precede the actual resolution of the underlying debt.

4

estate is an equitable claim, the court in probate should grant letters of administration." (*Ibid.*)[6]

Under *Daughaday,* Mitchell's *Marvin* action is a claim against the estate which justified issuance of letters of administration.

B.    *Appointment of the Public Administrator Was Not Statutorily Required*

Appellants contend it was error to appoint Mitchell rather than the public administrator. They argue the public administrator has statutory priority over Mitchell, who was a creditor of the estate. We find no error.

Any interested person may commence proceedings for administration of an estate by filing a petition seeking appointment of a personal representative. (§ 8000, subd. (a)(1).) A creditor is an "interested person." (§ 48, subd. (a)(1).) Appointment of an administrator (as opposed to executor or administrator with will attached) is governed by Chapter 4, Article 4, commencing with section 8460.[7] Section 8461 identifies the persons entitled to be appointed administrator in order of priority. As relevant here, children have priority over the public administrator, the public administrator has priority over creditors and creditors have priority over "any other person." (See § 8461, subds.

---

[6]    Although the court refers to a claim "in equity," we do not read *Daughaday's* holding as precluding the issuance of letters when the underlying claim is more properly characterized as one in law. The facts in *Daughaday* dealt with the effect prior probate proceedings in Kansas had on the probate in California.

The Supreme Court went on to say that the probate court has discretion to grant or refuse issuance of letters of administration in a "no asset" case. Appellants do not discuss the trial court's exercise of discretion, exclusively arguing that the probate court had no jurisdiction at all to issue letters. Accordingly any argument that the trial court abused its discretion in granting letters is waived. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545–546.) In any event, given the mandatory nature of the creditor's claim process (Prob. Code, § 9351) and the statute of limitations for this type of claim (Code Civ. Proc., § 366.3), we find no abuse of discretion here.

[7]    Appointment of a personal representative is governed by Chapter 4, commencing with section 8400. Appointment of executors is governed by Article 2, commencing with section 8420; appointment of administrator with the will attached (e.g. when the will does not name an executor) is governed by Article 3, commencing with section 8440.

5

(b) [children], (p) [public administrator], (q) [creditors], (r) [any other person].) The Probate Court's discretion is limited to appointing the qualified person with the highest priority. (*Estate of Gibson* (1963) 222 Cal.App.2d 299, 300-301.) If there is more than one qualified person with the same priority, the probate court has discretion to select among such persons. (§ 8467.)

The Probate Court may also appoint a person nominated by any person entitled to appointment. (§ 8465, subd. (a).) A nominee "has priority next after those in the class of the person making the nomination." (§ 8465, subd. (b).) For example, because a child has priority over a grandchild, a child's qualified nominee has priority over a grandchild.

Appointment of a personal representative is subject to contest. (§ 8004, subd. (a).) If the contestant asserts another person's right to appointment, the contestant *must file a petition to have that other person appointed* and the court must hear the two petitions together. (§ 8004, subd. (a).) Thus, if in response to an already filed petition someone else seeks appointment as personal representative or nominates a third person to so act, a separate petition must be filed. "If persons having priority fail to claim appointment as administrator, the court may appoint any person who claims appointment." (§ 8468; *Estate of Selb* (1949) 93 Cal.App.2d 788, 791 [public administrator who does not apply for letters of administration is not entitled to priority].) It stands as a corollary to this rule that, if a contestant with priority fails to file a petition nominating another person, the court may appoint any qualified person who claims appointment.

Here, Mitchell was the only party who filed a petition for letters of administration. Although appellants contested her appointment and advocated appointment of the public administrator instead, appellants did not file a competing petition. Citing their opposition papers filed with the trial court, appellants argue on appeal that they "nominated the public administrator in their objection to [Mitchell's] Petition." That is simply not so. First of all, appellants did not "nominate" anybody in their objections. What they did was to point out the statutory priority of appointment under section 8461 which gives priority to the public administrator over creditors. But no one "nominated" the public administrator and neither the public administrator nor appellants nor anyone else other

6

than Mitchell filed the mandated petition for appointment.  Secondly, appellants argue that the court had discretion under section 8466 to appoint someone in lieu of a creditor, such as the public administrator.  The only grounds asserted on appeal to support appellants' argument that the court abused its discretion is the claimed conflict of interest that Mitchell had.  As we discuss in the next section, we find no abuse of discretion in that regard.  In any event, even though the public administrator would have had priority over Mitchell both as the nominee of the decedent's children (§ 8465, subd. (b)) and also by virtue of section 8461, subdivision (p), the trial court did not err by failing to follow statutory priority when there was no alternative petition filed.

C.      *Mitchell Does Not Have an Incapacitating Conflict of Interest*

Appellants contend it was an abuse of discretion to appoint Mitchell because she has a conflict of interest with the estate and the heirs and " 'asserted rights and performed acts hostile [to them].' [Citations.]"  They argue Mitchell's *Marvin* action seeking $1,000,000 in damages against the estate and a constructive trust against appellants disqualifies her from appointment.  We disagree.

A person is not competent to act as personal representative (including administrator) if there are grounds for removing the person from office under section 8502, which provides:

> "A personal representative may be removed from office for any of the following causes:
> (a) The personal representative has wasted, embezzled, mismanaged, or committed a fraud on the estate, or is about to do so.
> (b) The personal representative is incapable of properly executing the duties of the office or is otherwise not qualified for appointment as personal representative.
> (c) The personal representative has wrongfully neglected the estate, or has long neglected to perform any act as personal representative.
> (d) Removal is otherwise necessary for protection of the estate or interested persons.
> (e) Any other cause provided by statute."

A conflict of interest with the beneficiaries does not disqualify a person from appointment as administrator.  (See *Estate of Cole* (1966) 240 Cal.App.2d 324, 330

7

["[A]n adversity of interest does not, in itself, disqualify a person named in a will from serving as executor as there is no statute authorizing disqualification on that ground."].) Certainly, creditors are not automatically disqualified from acting as a personal representative merely because they have a claim against the estate, because "creditor" is one of the statutorily enumerated classes of person entitled to serve as a personal representative. (§ 8461, subd. (q).) Every creditor arguably has an adverse interest to some of the beneficiaries of an estate. And of course, mere appointment does not adjudicate the creditor's claim in its favor. So Mitchell's status as a creditor does not automatically disqualify her.

The Court has the power to remove a creditor or any other person from acting as personal representative for the reasons stated in section 8502. *Estate of Effron* (1981) 117 Cal.App.3d 915, 929, involved the removal of an executor at the request of the beneficiaries. The court observed: " 'The test is probably whether the conflict of interest is with the estate itself rather than with other persons who may be interested in the estate.' [Citation.] The probate court, in examining the facts of a case, must decide whether the circumstances warrant the removal of an executor, and, except for clear abuse, the court's ruling will not be interfered with on appeal." (*Id*. at p. 930.) The appellate court will interfere with the trial court's exercise of discretion only upon a finding that "under all the evidence, viewed most favorably in support of the trial court's action, no judge reasonably could have reached the challenged result. [Citation.]" (*Estate of Hammer* (1993) 19 Cal.App.4th 1621, 1634.)

The same rule on conflicts of interest should equally apply to the initial appointment of the personal representative as it does to his or her removal. Here, appellants have not demonstrated any abuse of discretion in appointing Mitchell personal representative, notwithstanding the pendency of her *Marvin* action. Appellants' reliance on *Estate of Hammer* for a contrary result is misplaced. In *Hammer,* the court held the executor of a will who was engaged in a bitter divorce from the sole beneficiary should have been removed at the request of the beneficiary. The *Hammer* court chronicled the ways in which the executor had failed to perform his statutory duties, mismanaged estate

8

assets and breached his fiduciary duty to the beneficiary. (*Estate of Hammer, supra,* 19 Cal.App.4th at pp. 1635 et seq.) In addition, in the marital dissolution proceedings, the executor was asserting a claim adverse to the estate in that he was alleging the beneficiary made an oral gift to him of half of her multi-million dollar trust fund, from which she had personally paid $750,000 to a law firm hired by the executor to maintain an action on behalf of the estate; the executor claimed he had a personal interest in the estate's litigation against the law firm arising out of his interest in the beneficiary's separate trust fund.

The *Hammer* court observed: "In the instant case, we do not merely have the existence of a serious conflict of interest, but there is evidence, as acknowledged by the trial court, from which it could be concluded that the executor has exploited his position as executor to benefit his own selfish interests at the expense of the estate and the beneficiary. In other words, there is clear evidence in this case from which it could be concluded that the executor had already made his 'choice.' [Citation.] Under all the circumstances of this case, the trial court abused its discretion in failing to remove the executor on the ground of conflict of interest arising out of unrelated litigation against the estate's beneficiary." (*Hammer*, *supra*, 19 Cal.App.4th at p. 1642.) No such facts exist here: Mitchell is simply a creditor, and the trial court did not abuse its discretion in appointing her as personal representative.

## DISPOSITION

The judgment is affirmed. Mitchell shall recover her costs on appeal.


                                                    RUBIN, J.
WE CONCUR:



        BIGELOW, P. J.                                    FLIER, J.


9